UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE ROCKEFELLER UNIVERSITY,<br><br>        Plaintiff,<br><br>    v.<br><br>LIGAND PHARMACEUTICALS<br>INCORPORATED,<br><br>        Defendant. | 08-CV-2775 (KPC)(HP) |

**DEFENDANT LIGAND PHARMACEUTICALS INCORPORATE'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS, OR,
IN THE ALTERNATIVE, TO TRANSFER TO THE SOUTHERN DISTRICT OF
<u>CALIFORNIA</u>**

GREENBERG TRAURIG, LLP
Attorneys for Plaintiffs
200 Park Avenue
New York, New York
Telephone: (212) 801 9200
Fax: (212) 801 6400

# TABLE OF CONTENTS

**PAGE**

I. STATEMENT OF PERTINENT FACTS .................................................................................1

II. THIS COURT LACKS PERSONAL JURISDICTION OVER LIGAND ......................4

    A.    The Exercise of Jurisdiction Would be Improper Under State Law ............4

        1.    This Court does not have general personal jurisdiction over Ligand because Ligand is not continuously present in New York ......................................................................................................5

        2.    This Court lacks specific jurisdiction because the claim does not arise out of Ligand business transacted within New York ........5

    B.    The Exercise of Jurisdiction Would Violate Due Process ...........................6

III. ALTERNATIVE MOTION TO TRANSFER -- 28 U.S.C. § 1404(a) .........................7

    A.    Transfer to the Southern District of California is Appropriate in This Case .............................................................................................................7

    B.    The Relevant Factors Strongly Weigh Toward Transfer In This Case........7

        1.    The events giving rise to the suit occurred in California.................8

        2.    California would be more convenient to the parties .......................8

        3.    California would be more convenient to the witnesses ..................9

        4.    Most of the relevant proof is located in California ........................9

        5.    Many more witnesses can only be served process in California ...10

        6.    The plaintiff's choice of forum favors transfer.............................10

        7.    The forum's familiarity with governing law is at most a neutral factor ...................................................................................11

        8.    Transferring this case to California would promote trial efficiency........................................................................................12

        9.    The interest of justice would be better served in California ..........13

    C.    Transfer to the Southern District of California is Warranted In This Case ..................................................................................................13

IV. CONCLUSION................................................................................................................14

## TABLE OF AUTHORITIES

**PAGE**

**Cases**

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128 (S.D.N.Y.1992) .......7

*Arrow Electronics, Inc. v. Ducommun Inc.*, 724 F.Supp. 264 (S.D.N.Y.1989).................10

*Ashe v. Pepsico,* 443 F.Supp. 84 (S.D.N.Y. 1997) ...........................................................8

*Atlantic Mut. Ins. Co. v. M/V HUMACAO,* 169 F.Supp.2d 211 (S.D.N.Y. 2001).............12

*Bellepointe, Inc. v. Kohl's Dept. Stores, Inc.* 975 F.Supp. 562 (S.D.N.Y. 1997) ............4, 5

*Billing v Commerce One Inc.*, 186 F.Supp.2d 375 (S.D.N.Y. 2002)..................................8

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ....................................................6

*Credit Suisse Securities (USA) LLC v. Hilliard*, 469 F. Supp.2d 103 (S.D.N.Y. 2007) ...10

*G. Angel Ltd. v. Camper & Nicholsons USA, Inc.*, 2008 WL 351660
(S.D.N.Y. 2008).............................................................................................................8, 9

*Hanson v. Denckla*, 357 U.S. 235 (1958) .........................................................................6

*Hoffritz for Cutlery, Inc. v. Amjac, Ltd.*, 763 F.2d 55 (2d Cir.1985)..................................5

*Landoil Res. Corp. v. Alexander & Alexander Servs. Inc.*, 918 F.2d 1039 (2d Cir.1991)...5

*Malone v. Commonwealth Edison Co.*, 2 F. Supp. 2d 545 (S.D.N.Y. 1998).....................7

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d. 899 (2d Cir. 1981) ..............................12

*Markman v. Westview Instruments, Inc.*, 116 S. Ct. 1384 (1995) ....................................11

*McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 283 N.Y.S.2d 34 (1967).........6

*Nat'l Patent Dev. Corp. v. Am. Hosp. Supply Corp.*, 616 F.Supp. 114 (S.D.N.Y.1984)...11

*Perrin v. Pearlstein*, 314 F.2d 863 (2d Cir. 1963).............................................................11

*Royal Ins. Co.*, 2002 WL 31385815 (S.D.N.Y. 2002).......................................................11

*Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F.Supp.2d 505 (S.D.N.Y.2004) .............9

*Trophy Productions, Inc. v. Cinema-Vue Corp.,* 53 A.D.2d 18 (1976)...........................11

*Veronica Siverls-Dunhamn et al. v. Sueng Huen Lee*, 2006 WL 3298964
(S.D.N.Y. 2006) ................................................................................................7

*Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001) .........................4

*Yurman Designs, Inc. v. A.R. Morris Jewelers, L.L.C.*, 41 F. Supp.2d. 453
(S.D.N.Y. 1999) ................................................................................................5

**Federal Statutes**

28 U.S.C. § 1391 .............................................................................................10

28 U.S.C. § 1404 ...............................................................................................7

**Californai Statutes**

Cal. Civ. Proc. Code § 410.10 .....................................................................7, 10

**New York Statutes**

CPLR § 302 .......................................................................................................5

Defendant Ligand Pharmaceuticals Incorporated ("Ligand") respectfully submits this memorandum of law in support of its motion, pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure to dismiss the Complaint, dated March 4, 2008 (the "Complaint") of Plaintiff The Rockefeller University ("Rockefeller") for lack of personal jurisdiction over Ligand. In the alternative, Ligand moves to transfer this case to the Southern District of California under 28 U.S.C. §1404(a) in favor of Ligand's lawsuit for Declaratory Judgment filed on March 4, 2008, the same date that this lawsuit was originally filed in state court.

This Court lacks personal jurisdiction because Ligand lacks sufficient contacts with this forum to give rise to general or specific personal jurisdiction over Ligand under New York State's long-arm statue or under the Constitution of the United States. Ligand is a Delaware Corporation with headquarters in San Diego, California that has no current business presence in New York.

## I. STATEMENT OF PERTINENT FACTS

### A. Ligand Currently Has No General "Presence" in New York

Formed in 1987, Ligand is a relatively small biotech company that focuses on discovering and developing new drugs for the treatment of various diseases. *Ligand Pharm., Inc. Annual Report (Form 10-K)*, at 4, 36 (Mar. 16, 2007), Declaration of Alan Kessler, ¶¶2-4, Exhibit B; Exhibit A. Ligand is a Delaware corporation, based in San Diego, California, where all of its facilities and employees are located, and where it performs all of its basic discovery research activities. Declaration of Audrey Warfield-Graham ¶4, Exhibit C.

As of March 4, 2008, the date the complaint in this action was filed in state court, Ligand had no "presence" in New York. Specifically, when the complaint was filed, Ligand (1) was not selling any goods or services in New York, (2) did not own, lease or rent any real property in New York, (3) had no facilities of any kind in New York, (4) had no employees, sales representatives or independent contractors in New York, (5) had no telephone listings or mailing addresses in New York, (6) was not conducting any marketing or advertising directed specifically to residents of New York, (7) had no officers who were residents of or domiciled in

1

Agreement," attached to Complaint as Exhibit A). *Id.* at 24. Under the Agreement, Rockefeller licensed certain "Technical Information" and "Patent Rights" developed in part by Dr. Robert B. Darnell, M.D., Ph.D. ("Darnell"). *Agreement* at 1. Darnell served on Ligand's Scientific Advisory Board for several years and visited with Ligand scientists in San Diego from 1996 until at least 2001. Declaration of Keith Marschke, ¶12, Exhibit E.

The present dispute concerns whether Ligand used Rockefeller's Patent Rights or Technical Information in the development of the three TPO compounds. Ligand will show that, although it may have used Rockefeller's technology in various programs over the years, none of *those* programs led to the TPO compounds that form the basis of Rockefeller's complaint.

All of the relevant Ligand work was performed in San Diego. Specifically, eltrombopag and SB-559448 were discovered as part of a 1997-2001 research program, conducted under a 1994 Research Development and License Agreement ("GSK License") with SmithKline Beecham Corporation, now GlaxoSmithKline ("GSK"). Declaration of Alan Kessler, ¶¶2-4, Exhibit B; *Ligand Pharm., Inc. Annual Report (Form 10-K)*, at 20 (Mar. 13, 2006), Exhibit G. All of Ligand's work under the GSK License was performed in San Diego. Declaration of Keith Marschke, ¶16, Exhibit E. To the extent any work performed by GSK is relevant to this litigation; none of that work was performed in New York. *Id.* LGD-4665 is a potential pharmaceutical product that was discovered by Ligand in San Diego in a research program that started no earlier than the second half of 2003. *Ligand Pharm., Inc. Annual Report (Form 10-K)*, at 6 (Mar. 16, 2007). GSK had no involvement in the development of LGD-4665. Declaration of Keith Marschke, ¶9, Exhibit E.

Not only was the Ligand work performed in San Diego, all of the laboratory notebooks and other records documenting that work are stored in San Diego. Declaration of Keith Marschke, ¶10, Exhibit E. Moreover, to a great extent, the personnel involved in that work remain in California, although many are no longer in Ligand's employ. Ligand plans to elicit the testimony of individuals who have knowledge about the research efforts that lead to the TPO Compounds. At present, Ligand expects that testimony of at least fifty (50) individuals, all believed to be current California residents, will be relevant in this case. Spreadsheet of Potential

3

Witnesses, Exhibit H, Declaration of Keith Marschke, ¶¶14-15, Exhibit E; Declaration of Audrey Warfield-Graham, ¶¶14-15, Exhibit C. Accordingly, the evidence and witnesses relating to the Ligand research work at issue are located in California.

**D. This Dispute Should Proceed in the Suit Pending in San Diego Federal Court**

In a letter dated August 9, 2007, Ligand terminated the Agreement under Section 11.2. ("Ligand shall have the right to terminate any license grant at any time..."). For several months, a tolling agreement protected the parties from a first strike lawsuit as the parties attempted to resolve the dispute. However, the day after the tolling agreement expired, Ligand and Rockefeller each filed a lawsuit in its home forum. Thus, on March 4, Rockefeller filed the present suit in New York state court and Ligand filed a declaratory judgment action in federal court in the Southern District of California. California Complaint, Exhibit I. Ligand submits that if the present case is not dismissed, it should be transferred and consolidated with the suit pending in the Southern District of California.

## II. THIS COURT LACKS PERSONAL JURISDICTION OVER LIGAND

Ligand moves to dismiss this action under Rule 12(b)(2) of the Federal Rules of Civil Procedure. On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff (Rockefeller) bears the burden to demonstrate that the court has jurisdiction. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001). To do so, Rockefeller must demonstrate both that jurisdiction is proper in New York under the applicable statute and that the exercise of jurisdiction in New York meets the requirements of due process. *Id.* Rockefeller can show neither.

**A.     The Exercise of Jurisdiction Would be Improper Under State Law**

New York law allows for the exercise of jurisdiction on a foreign corporation such as Ligand under its long arm statute on only two grounds, neither of which apply here: "(1) if the corporation is 'present' in New York, or (2) if the plaintiff's claim arises out of the corporation's transaction of business within the state." *Bellepointe, Inc. v. Kohl's Dept. Stores, Inc.* 975 F.Supp. 562, 564 (S.D.N.Y. 1997) (internal citations omitted).

4

1. **This Court does not have general personal jurisdiction over Ligand because Ligand is not continuously present in New York**

Under C.P.L.R. §301 a foreign corporation may be subjected to personal jurisdiction if it is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *Landoil Res. Corp. v. Alexander & Alexander Servs. Inc.*, 918 F.2d 1039, 1043 (2d Cir.1991). The defendant must be present in New York not occasionally or casually, but with a fair measure of permanence and continuity at the time suit is filed. *Landoil*, 918 F.2d at 1043; *Yurman Designs, Inc. v. A.R. Morris Jewelers, L.L.C.*, 41 F. Supp.2d. 453, 457. Ligand has no meaningful presence in this forum, as it has no office, solicits no business, and has no employees in New York. *See, Hoffritz for Cutlery, Inc. v. Amjac, Ltd.*, 763 F.2d 55, 58 (2d Cir.1985). Furthermore, the mere fact that Ligand appointed an agent for service of process in New York in 1998 is insufficient to subject it to personal jurisdiction in New York. *See, Bellepointe, Inc. v. Kohl's Department Stores, Inc.*, 975 F.Supp. 562, 564 (S.D.N.Y.1997).

As noted above, the inquiry focuses on Ligand's "presence" in New York at time the suit was filed: March 4, 2008. As of that date, Ligand had no presence in New York and, therefore, cannot be brought into court under the general jurisdiction provision of New York's long-arm statute. Ligand no longer sells or advertises any goods or services in New York and has no employees or sales persons in New York. Ligand has no facilities of any kind in New York and does not own, lease or rent any real property in New York. Ligand has no telephone listings or addresses in New York. Thus, Ligand does not perform business in New York with the continuity necessary to find general jurisdiction under the statute.

2. **This Court lacks specific jurisdiction because the claim does not arise out of Ligand business transacted within New York**

Under New York C.P.L.R. § 302(a)(1), a foreign corporation may be subject to personal jurisdiction if it "transacts any business within the state or contracts anywhere to provide goods or services in the state" and plaintiff's claim arises out of that business activity. To "transact business" in New York, however, the foreign corporation must "purposely avail [ ] itself of the

5

privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34 (1967) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The "totality of the circumstances" determines whether a party has transacted business in New York.

Here, Rockefeller's claim relates to Ligand's activities in discovering and developing the TPO Compounds. This work was simply not conducted in New York. Instead, it occurred in California.

In sum, Ligand is not subject to specific jurisdiction in this forum. Ligand did not transact business in New York and Rockefeller's claim arises out of acts that occurred in California, not New York. Because Ligand has not been continuously present in New York and because the Rockefeller's claim arises out of acts that occurred in California, there is no statutory authority upon which to bring Ligand into this Court. Accordingly, Ligand urges that this suit be dismissed for lack of personal jurisdiction.

**B.    The Exercise of Jurisdiction Would Violate Due Process**

Even if this court had statutory authority to subject Ligand to personal jurisdiction, doing so would violate Ligand's right to due process. In order for a plaintiff to establish "minimum contacts," the defendant must have purposefully availed itself of the privilege of conducting activities in the forum state. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). In its minimum contacts analysis, the court should consider the quality and nature of the contacts. *Id*. Contacts which are random, fortuitous, or attenuated cannot establish personal jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985). Once it has been established that a defendant has minimum contacts with the forum state, the court may evaluate whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Id*. at 476, citing *Int'l Shoe*, 326 U.S. at 320. Rockefeller cannot meet its burden to show those minimum contacts or that the exercise of jurisdiction here would be fair. Thus, even if this Court finds that the exercise of jurisdiction is proper under New York's long arm statute, Ligand urges that the Court still dismiss this suit for lack of personal jurisdiction in order to protect Ligand's right to due process.

Because, Rockefeller can not meet its burden to show minimum contacts under the New York standard this Court "need not reach the due process analysis." *Veronica Siverls-Dunhamn et al. v. Sueng Huen Lee,* 2006 WL 3298964 at *4 (S.D.N.Y. 2006) (citing *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 471).

### III. ALTERNATIVE MOTION TO TRANSFER – 28 U.S.C. §1404(a)

In the alternative, Ligand moves to transfer venue to the Southern District of California under 28 U.S.C. §1404(a). Title 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

This dispute revolves around Ligand's use of its assay technology in connection with its own potential product, LGD 4665, and in providing services to GSK per the GSK License. The relevant witnesses and documents are almost exclusively in California, more specifically in San Diego. Where those evidentiary issues dominate, transfer is often ordered. *See, 800-Flowers, Inc. v. Intercontinental Florist, Inc.,* 860 F.Supp. 128, 134 (S.D.N.Y.1992).

### A.  Transfer to the Southern District of California is Appropriate in This Case

This action could have been brought in the Southern District of California because that district has personal jurisdiction over Ligand and venue is proper there. See 28 U.S.C. § 1391 (providing that a civil action may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State"); Cal. Civ. Proc. Code § 410.10 (West 2006) (a California court may exercise jurisdiction on any basis not inconsistent with the California or U.S. Constitution). Ligand, the only defendant in this matter, resides in California and is located in the Southern District of California.

### B.  The Relevant Factors Strongly Weigh Toward Transfer In This Case

This Court has considered nine factors in determining whether a transfer to a foreign district is proper: (1) the location of the events giving rise to the suit; (2) the convenience of the parties; (3) the convenience of the witnesses;(4) the relative ease of access of proof; (5) the availability of process for unwilling witnesses; (6) the plaintiff's choice of forum; (7) a forum's familiarity with the governing law; (8) trial efficiency; and (9) the interest of justice. *Malone v.*

7

*Commonwealth Edison Co.*, 2 F. Supp. 2d 545, 547 (S.D.N.Y. 1998). Of these nine factors, eight favor transfer and one is, at worst, neutral. Furthermore, "[i]n making [the determination of whether to transfer the case], the court cannot resort to the usual rule of thumb according priority to the suit which is first in time, for both of the actions under consideration here were instituted on the same day. Rather, the court must look to the balance of convenience between the available forums." *Ashe v. Pepsico,* 443 F.Supp. 84, 85 (S.D.N.Y. 1997) [internal citations omitted]

### 1. The events giving rise to the suit occurred in California

"Courts routinely transfer cases when the principal events occurred in another district and the principal witnesses are located there." *G. Angel Ltd. v. Camper & Nicholsons USA, Inc.,* 2008 WL 351660 at *4 (S.D.N.Y. 2008) (*citing Billing v Commerce One Inc.,* 186 F.Supp.2d375, 377, S.D.N.Y.2002). This Court has found that the location the locus of operative facts is "important factor to be considered in deciding where a case should be tried." *800-Flowers* 860 F.Supp. at 134. In order to determine the locus of operative facts, this Court looks for the "the site of events from which the claim arises." *Id.*

This lawsuit concerns events that occurred in San Diego, California. Ligand's work with the Technical Information provided by Darnell took place in San Diego. Ligand's development of its screening assay technology for the TPO Compounds occurred at its laboratories in San Diego, California. Ligand keeps all of its records and documents about this work in California and all of Ligand's employees who worked on TPO Compounds are, or were at the time, residents of California. See Spreadsheet of Potential Witnesses, Exhibit H; Declaration of Keith Marschke, ¶¶14-15, Exhibit E; Declaration of Audrey Warfield-Graham, ¶¶14-15, Exhibit C.

### 2. California would be more convenient to the parties

Ligand is in possession of most of the evidence that will be relevant to this case. Because of this fact, it would be a greater burden for Ligand to litigate this controversy in New York than it would be for Rockefeller to bring its case in California. Ligand has over 50 employees and former employees who are potential witnesses in this action, of which almost all reside in California. Rockefeller will most likely only need the testimony of Darnell and a few others.

8

Because most of the questions of fact concern the research activities of Ligand's employees and the evidence in Ligand's possession, it would be much more expensive for Ligand to move its proof and send its witnesses to New York than it would be for Rockefeller to attend proceedings in California. Furthermore, given the relative size of the parties (for example, Ligand has fewer than 60 employees, whereas Rockefeller has substantially more than 1,000), any cost or inconvenience involved has a greater impact on Ligand than it does on Rockefeller. Because Ligand's inconvenience will be substantially greater if it has to defend a suit in New York than Rockefeller's would be if it were made to answer in California, this factor weighs strongly in favor of a transfer to the Southern District of California.

### 3.     California would be more convenient to the witnesses

The convenience of the forum for witnesses "is probably considered the single most important factor in the analysis of whether a transfer should be granted." *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F.Supp.2d 505, 516 (S.D.N.Y.2004). "When weighing this factor, the Court considers the materiality, nature, and quality of each witness, in addition to the number of witnesses in each district." *G. Angel*, 2008 WL 351660 at *4. "Generally, the convenience of a non-party witness is given greater weight than that of a party witness." *Id.* (*citing* 2002 WL 31385815, at *5).

Most of the key witnesses in this case will be Ligand officers, employees, and former employees. As seen in Exhibit H, potential witnesses are no longer employed at Ligand. The main facts that will be at issue relate to Ligand's development of the TPO Compounds and what information Ligand used in making those developments. Ligand has over 50 employees and former employees who will be potential witnesses in this action. The only potential witnesses from Rockefeller who may be located in New York are Darnell and a reasonably small number of other individuals.

### 4.     Most of the relevant proof is located in California

In order to determine whether any Patent Rights or Technical Information was used in the creation of the TPO Compounds, it will be necessary to depose the numerous Ligand employees and former employees who worked on their development. Furthermore, any and all of Ligand's

9

relevant lab records, notebooks, documents and test results are implicated in this law suit.

### 5. Many more witnesses can only be served process in California

"The availability of process to compel the testimony of important witnesses is an important consideration in transfer motions." *Arrow Electronics, Inc. v. Ducommun Inc.*, 724 F.Supp. 264, 266 (S.D.N.Y.1989). Rockefeller and its employees have a strong interest in the present suit, and are likely to readily testify in either forum. On the other hand, many of Ligand's key witnesses are former employees who may not be willing to come to court and testify. For instance, there are several witnesses who have been involved in the development of the TPO Compounds who still reside in California and may not come to court unless subpoenaed. See Exhibit H.

If this action proceeds in this Court, it will not be possible to compel unwilling California witnesses to testify in New York at trial under Fed. R. Civ. Proc. 45(b)(2). Conversely, if this action were to proceed in San Diego, subpoenas could issue directly from that court under Fed. R. Civ. Proc 45(b)(2)(C) and 90. Cal. Civ. Proc. Code § 410.10 and the California court could compel unwilling witnesses to appear.

Each of the California witnesses would be unavailable for service of process in this forum, but would be available if this matter were transferred to the Southern District of California. Because the California court could compel several key witnesses to appear at trial, this factor strongly favors transfer.

### 6. The plaintiff's choice of forum favors transfer

If the Court grants Ligand's motion, Rockefeller's choice of forum for this action will be denied, but denial of this motion would deny Ligand's choice of forum in San Diego for its separate action. This factor, therefore, at first blush, would appear to be neutral because either outcome is likely to preserve one Plaintiff's and deny the other Plaintiff's choice of forum. However, in this case Rockefeller's choice of forum should be given less weight because Ligand is not subject to personal jurisdiction in New York. This Court has found that transfer is often appropriate in cases in which there is a serious question as to whether the court has personal jurisdiction over the defendants. *See Credit Suisse Securities (USA) LLC v. Hilliard*, 469 F.

10

Supp.2d 103, 112 (S.D.N.Y. 2007). Here transfer is appropriate because there is, at a minimum, a serious question over whether this court has personal jurisdiction over Ligand.

### 7. The forum's familiarity with governing law is at most a neutral factor

Here, the Agreement has a choice-of-law clause selecting New York state law, but it is not clear that this is controlling. Such provisions are not controlling and may be disregarded where the most significant contacts with the matter in dispute are in another State. *Perrin v. Pearlstein,* 314 F.2d 863, 867 (2d Cir. 1963). Moreover, in the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied. *Trophy Productions, Inc. v. Cinema-Vue Corp.,* 53 A.D.2d 18, 22, (1976). The Agreement does not mandate venue of any dispute and is silent on the choice of forum. Thus, fora other than New York were contemplated.

Even if New York law is found to be governing, this factor should be given very little weight here because there are no complex issues of New York law at the center of this dispute. "[T]he applicable law factor is entitled to little weight in cases where 'the governing law presents no complex legal questions and has not been shown to be unclear, unsettled or difficult.'" *Royal Ins. Co.,* 2002 WL 31385815, at *8 (quoting *Nat'l Patent Dev. Corp. v. Am. Hosp. Supply Corp.,* 616 F.Supp. 114, 119 (S.D.N.Y.1984)).

In fact, the governing state law is contract law which is not generally unclear, unsettled, or difficult. Moreover, many of the key issues in the case arise under federal patent law. For instance, whether Ligand's TPO compounds fall within Rockefeller's Patent Rights and whether Rockefeller has breached the agreement by failing to discharge its duty of disclosure to the PTO are issues of federal patent law which require, *inter alia*, the Court's determination of the meaning of the claim terms. *See Markman v. Westview Instruments, Inc.,* 116 S. Ct. 1384, aff'g 52 F.3d 967 (Fed. Civ. 1995). These issues arise as a matter of federal patent law, not New York law. Because this case will involve substantial issues of federal law, the importance of the choice of law provision is mitigated.

To the extent interpretation of New York state law is required, there is no doubt that New York businesses often transact business in California and, therefore California courts are quite

11

familiar with New York. Contracts stipulating to New York law are ubiquitous and there is no reason to believe that the Southern District of California will face any significant difficulty in applying New York law to this controversy, if so required. Because the laws of New York are routinely interpreted by courts of California, this factor should not influence a decision to transfer.

### 8.   Transferring this case to California would promote trial efficiency

Although a Court may initially find that it has jurisdiction over a plaintiff before allowing discovery, the question cannot be finally settled without a pretrial evidentiary hearing or at trial. *Atlantic Mut. Ins. Co. v. M/V HUMACAO*, 169 F.Supp.2d 211, 214 (S.D.N.Y. 2001)( "While a *prima facie* showing of jurisdiction is adequate to defeat a 12(b)(2) motion made before discovery, the party asserting jurisdiction bears the ultimate burden of proving by a preponderance of the evidence at trial or an evidentiary hearing that the court has jurisdiction over the defendant."); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d. 899, 904 ("Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial.").

If this action were to proceed in New York, the parties would ultimately need to engage in jurisdictional discovery and court proceedings on that issue. Moreover, even if this action were to survive a second jurisdictional challenge, the issue would be subject to appeal to the Second Circuit.

In sharp contrast, if this Court transfers the present action to the Southern District of California in its current form then Ligand will be in the position of the defendant and will readily submit to personal jurisdiction in that court. Thus, such a transfer would obviate the need for expensive and time consuming jurisdictional inquiries.

Because transferring this action to the Southern District of California would eliminate the need for jurisdictional discovery, future motions to dismiss, and potential appellate review thereof, such a ruling is interest of trial efficiency. Because granting the present motion would save both parties and the courts considerable amounts of time and resources, this factor weighs strongly in transferring this action to the Southern District of California.

### 9. The interest of justice would be better served in California

As noted above, a considerable proportion of Ligand's key witnesses may not voluntarily appear in any forum. If this case proceeds to a jury trial it is very likely that Darnell will be Rockefeller's key witness. If Ligand is unable to bring most important fact witnesses into the courtroom, Ligand may be unable to compete with Darnell's prestige and charisma. Depriving Ligand access to its key witnesses while allowing Darnell to speak to the jury would unfairly tip the scales in favor of Rockefeller. Thus, Ligand's will be disadvantaged if this case proceeds in a court that does not have subpoena power in California. In order to avoid an unjust result, this case should be transferred to the Southern District of California where Ligand will be able to subpoena all of its key fact witnesses.

Proceeding in New York is also unfair and fails to serve the interests of justice or efficiency in view of the significant issue regarding the lack of personal jurisdiction over Ligand in New York that will result in additional discovery, briefing and possibly appeal if the case is not dismissed or transferred.

### C. Transfer to The Southern District of California is Warranted In This Case

Ligand urges the Court to transfer this case to the Southern District of California on the factors discussed above. Each of the factors above weighs in favor of transfer to the Southern District of California, or is neutral as to transfer. The conveniences of the witnesses and parties, and the interests of justice would be best served by moving this action to the Southern District of California where the entirety of the dispute is already at issue.

## IV. CONCLUSION

For the reasons above, Ligand respectfully requests that this Court grant Ligand's motions to dismiss for lack of personal jurisdiction. In the alternative, Ligand respectfully requests that this Court grant Ligand's alternative motion to transfer this action to the Southern District of California.

Dated: New York, New York
March 21, 2008

GREENBERG TRAURIG, LLP

Simon Miller
Sean P. Cameron
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

Attorneys for Defendant
LIGAND PHARMACEUTICALS
INCORPORATED

OF COUNSEL:

Darrell L. Olson
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

and

Joseph M. Reisman
Ali S. Razai
KNOBBE, MARTENS, OLSON & BEAR, LLP
550 West C Street, Suite 1200
San Diego, CA 92101
Telephone: (619) 687-2121
Facsimile: (619) 235-0176