FOLEY & LARDNER LLP
Peter N. Wang (PW 9216)
Douglas S. Heffer (DH 6082)
90 Park Avenue
New York, New York 10016-1314
Tel: (212) 682-7474
Fax: (212) 687-2329

Anat Hakim (AH 4398)
3000 K Street, NW-Suite 500
Washington, DC 20007-5101
Tel: (202) 672-5300
Fax: (202) 672-5399

*Attorneys for Defendant The Rockefeller University, a New York*
*not-for-profit corporation*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE ROCKEFELLER UNIVERSITY,

Plaintiff,

v.

LIGAND PHARMACEUTICALS
INCORPORATED,

Defendant.

08-CV-2755 (KPC)(HP)

**PLAINTIFF THE ROCKEFELLER UNIVERSITY'S MEMORANDUM OF LAW IN
OPPOSITION TO LIGAND PHARMACEUTICALS INC.'S MOTION TO DISMISS, OR,
IN THE ALTERNATIVE, TO TRANSFER TO THE SOUTHERN DISTRICT OF
CALIFORNIA**

# TABLE OF CONTENTS

**Page**

Preliminary Statement ................................................................................... 1

Background ................................................................................................... 2

Argument ...................................................................................................... 8

1.    THE COURT SHOULD DENY
LIGAND'S MOTION TO DISMISS THE CASE ......................................... 8

    a.    The Court Has Personal Jurisdiction Over Ligand .............................. 8

        i.    The Court Has General Jurisdiction Over Ligand .................. 8

        ii.    The Court Has Specific Jurisdiction Over Ligand ................ 10

        iii.    This Court's Exercise Of Personal
Jurisdiction Over Ligand Would Be Consistent
With Constitutional Requirements Of Due Process .............. 13

    b.    Venue Is Proper In This Court .......................................................... 13

    c.    The University's Lawsuit Is First-Filed ............................................ 14

    d.    Ligand's Declaratory Action Is Disfavored ...................................... 15

2.    THE COURT SHOULD DENY
LIGAND'S MOTION TO TRANSFER THIS CASE .................................. 16

    a.    Transfer Of This Case to the
Southern District of California Is Not Proper .................................... 17

        i.    The Convenience of the Parties and Witnesses And
The Availability Of Process For Unwilling Witnesses .......... 17

        ii.    Location Of The Events Giving
Rise To The Suit Favors New York ..................................... 19

        iii.    A New York Court Is More
Familiar With New York Law ............................................. 19

        iv.    Plaintiff's Choice of Forum ................................................. 19

## TABLE OF CONTENTS
### (cont'd)

**Page**

v.   The Availability of Compulsory
     Process to Compel Attendance of Unwilling
     Non-Party Witnesses And The Relative Ease
     Of Access To Sources of Proof Favor New York.................. 20

vi.  Trial Efficiency Favors the
     Southern District of New York ............................................... 21

Conclusion ....................................................................................................... 21

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                            <u>**Page**</u>

<u>800-Flowers, Inc.</u> v. <u>Intercontinental Florist,</u>
860 F.Supp. 128 (S.D.N.Y. 1994) ...................................................................... 14

<u>Aerotel</u> v. <u>Sprint Corp.,</u>
100 F.Supp.2d 189 (S.D.N.Y. 2000)................................................................... 20

<u>Agency Rent A Car System, Inc.</u> v. <u>Grand Rent A Car Corp.,</u>
98 F.3d 25 (2d Cir. 1996)................................................................................... 12

<u>Allstate Ins. Co.</u> v. <u>Valley Physical Medicine & Rehabilitation P.C.,</u>
475 F.Supp.2d 213 (E.D.N.Y. 2007) .................................................................. 15

<u>Augsbury Corp.</u> v. <u>Petrokey Corp.,</u>
470 N.Y.S.2d 787, 97 A.D.2d 173 (3d Dep't 1983) ............................................. 8

<u>Bensusan Restaurant Corp.</u> v. <u>King,</u>
126 F.3d 25 (2d Cir. 1997)................................................................................... 8

<u>Berisford Capital Corp.</u> v. <u>Central States, Se. & Sw. Area Pension Fund,</u>
677 F.Supp. 220 (S.D.N.Y. 1988) ...................................................................... 14

<u>Billing</u> v. <u>Commerce One, Inc.,</u>
186 F.Supp.2d 375 (S.D.N.Y. 2002)................................................................... 21

<u>Burger King Corp.,</u> v. <u>Rudzewicz,</u>
471 U.S. 462 (1985)........................................................................................... 12

<u>Chong</u> v. <u>Healthtronics, Inc.,</u>
No. CV-06-1287, 2007 WL 1836831 (E.D.N.Y. June 20, 2007) ........................... 9

<u>City of New York</u> v. <u>Exxon Corp.,</u>
932 F.2d 1020 (2d Cir. 1991).............................................................................. 14

<u>Coker</u> v. <u>Bank of America,</u>
984 F.Supp. 757 (S.D.N.Y. 1997) ................................................................. 16, 21

<u>Columbia Pictures Indus., Inc.</u> v. <u>Schneider,</u>
435 F. Supp. 742 (S.D.N.Y. 1977) ..................................................................... 15

<u>Commercial Solvents Corp.</u> v. <u>Liberty Mutual Insurance Co.,</u>
371 F.Supp. 247 (S.D.N.Y. 1974) ...................................................................... 20

# TABLE OF AUTHORITIES
### (cont'd)

**Cases** (cont'd)                                                                                           **Page**

Crutchfield v. Country Wide Home Loans,
No. 02 Civ. 9092, 2003 WL 102879 (S.D.N.Y. January 10, 2003)........................................ 20

In re Cuyahoga Equipment Corp.,
980 F.2d 110 (2d Cir. 1992).................................................................................................. 16

D.H. Blair & Co., Inc. v. Gottdiener,
462 F.3d 95 (2d Cir. 2006).............................................................................................. 10, 13

Employers Insurance of Wausau et al v. Fox Entertainment Group, Inc., et al,
--- F.3d ----, No. 06-4652-cv, 2008 WL 817509 (2d Cir. Mar. 27, 2008) ...................... 14, 15

First City Nat'l Bank & Trust Co. v. Simmons,
878 F.2d 76 (2d Cir. 1989).................................................................................................. 14

Ford Motor Co. v. Ryan,
182 F.2d 329 (2d Cir. 1950)................................................................................................. 19

Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.,
415 F.Supp.2d 370 (S.D.N.Y. 2006).................................................................................... 20

Goldstein v. CTT Mobile Management Inc.,
No. 84 Civ. 824, 1985 WL 321 (S.D.N.Y. Feb. 26, 1985) .................................................. 11

Herbert Ltd. Partnership v. Electronic Arts Inc.,
325 F.Supp.2d 282 (S.D.N.Y. 2004).................................................................................... 17

Howard v. Four Seasons Hotels Ltd.,
No. 96 Civ. 4587, 1997 WL 107633 (S.D.N.Y. March 10, 1997)........................................ 19

International Shoe Co. v. Washington,
326 U.S. 310 (1945).............................................................................................................. 13

Iyalla v. TRT Holdings, Inc.,
No. 04 Civ. 8114, 2005 WL 1765707 (S.D.N.Y. July 25, 2005) ........................................... 8

Kreutter v. McFadden Oil Corp.,
71 N.Y.2d 460, 522 N.E.2d 40 (N.Y. 1988) ....................................................................... 10

# TABLE OF AUTHORITIES
## (cont'd)

**Cases (cont'd)**                                                                                    **Page**

Lancaster v. Zuffle,
165 F.R.D. 38 (S.D.N.Y. 1996) ......................................................................... 13

Lynch ex rel. v. National Prescription Administrators,
No. 03 Civ. 1303, 2004 WL 385156 (S.D.N.Y. March 1, 2004)........................... 18

McGowan v. Smith,
52 N.Y.2d 268, 419 N.E.2d 321 (N.Y. 1981) ....................................................... 10

National Union Fire Insurance Co. v. Karp,
108 F.3d 17 (2d Cir. 1997)..................................................................................... 15

In re Nematron Corp. Securities Litigation,
30 F.Supp.2d 397 (S.D.N.Y. 1998) ....................................................................... 16

Pilates, Inc. v. Pilates Insurance Inc.,
891 F.Supp. 175 (S.D.N.Y. 1995) ......................................................................... 16

Quan v. Computer Sciences Corp.,
2008 WL 89679 (E.D.N.Y. January 7, 2008) ....................................................... 19

SAS Group Inc. v. Worldwide Inventions, Inc.,
245 F.Supp.2d 543 (S.D.N.Y. 2003)...................................................................... 11

Schreiber v. Eli Lily and Co.,
No. Civ. A. oscv 2616, 2006 WL 782441 (E.D. Pa. March 27, 2006) .................. 18

Wang v. L.B. International Inc.,
No. C04-2475JLR, 2005 WL 2090672 (W.D. Wash. August 29, 2005).............. 18

Williams Advanced Materials, Inc. v. Target Technology Co., Inc. LLC,
No. 03-cv-276-A, 2007 WL 2245886 (W.D.N.Y. August 1, 2007) ...................... 14

**Statutes and Rules**

Federal Rules of Civil Procedure

     Rule 12(b)(3)............................................................................................... 13

     Rule 45(b)(2)(A)(B)................................................................................... 20

**TABLE OF AUTHORITIES**
**(cont'd)**

**Statutes and Rules (cont'd)**                                              **Page**

New York Civil Practice Law and Rules

    Rule 302 ................................................................................................................ 8

    Rule 302(a)(1) ............................................................................................... 10, 11

United States Code

    Title 28, Section 1391 ........................................................................................ 13

    Title 28, Section 1404 .......................................................................................... 1

    Title 28, Section 1404(a) ................................................................................... 16

    Title 28, Section 2201 .................................................................................... 5, 15

## PRELIMINARY STATEMENT

The Rockefeller University (the "University") submits this memorandum in opposition to Ligand Pharmaceuticals, Inc.'s ("Ligand") Motion to Dismiss, or, in the Alternative, to Transfer to the Southern District of California (the "Motion").

In this action, which is the earlier filed and served matter, the University seeks damages and injunctive relief based on claims for breach of a September 30, 1992 License Agreement between the University and Ligand (the "1992 Agreement"), unjust enrichment/constructive trust, quantum meruit, specific performance of the University's contractual right under the 1992 Agreement to perform an audit of Ligand, and a declaration that certain products are subject to the terms and payment provisions of the 1992 Agreement.

Ligand's Motion should be denied for five reasons: (1) this Court has personal jurisdiction over Ligand; (2) venue is proper in this District; (3) the University's New York action is the first-filed and served matter; (4) Ligand's Declaratory Judgment lawsuit, which it filed in the Southern District of California, is improper; and (5) the balance of factors under 28 U.S.C. §1404 tips in favor of keeping this case in New York. This action, and Ligand's Southern District of California declaratory action, involve the same state law issues of contract interpretation of the 1992 Agreement, which, by its terms, must be interpreted and governed according to New York law. Furthermore, as discussed herein, several key witnesses are located in or near New York, and Ligand, having registered to do business in New York, is subject to personal jurisdiction of this Court and cannot claim that New York is an inconvenient forum. Finally, whereas Ligand in the Southern District of California action seeks a discretionary declaration of rights, the University in this New York action seeks damages for actual injury and in that context, a decision on the same issues Ligand raises in California. Under similar

1

circumstances, courts have affirmed that the declaratory action should be dismissed, stayed or transferred in favor of the parallel proceeding involving the same issues (especially, where as here, this Court regularly interprets and enforces contracts under New York law) and parties.

The University respectfully submits that there are ample reasons for this Court to deny Ligand's Motion and to allow this case to proceed in New York.

## BACKGROUND

The University owns groundbreaking inventions that are powerful tools to screen for therapeutic drugs and were discovered by Rockefeller University Professor James E. Darnell Jr. The University exclusively licensed these valuable inventions to Ligand under the 1992 Agreement. Working under a 1994 agreement with its exclusive sublicensee SmithKline Beecham ("SKB", now GlaxoSmithKline) ("1994 SKB/Ligand Agreement") and using the University's inventions, Ligand identified several pharmaceutical molecules and received several milestone payments from SKB. Ligand has failed to pay the University its contractual share of these milestone payments pursuant to the 1992 Agreement, despite the University's repeated payment requests. Instead, in August 2007, shortly before SKB requested approval from the Food and Drug Administration of Promacta®, one of the pharmaceutical molecules identified under the 1994 SKB/Ligand Agreement, and before royalties on Promacta® are anticipated to be paid by SKB to Ligand, Ligand notified the University that it was unilaterally terminating the 1992 Agreement, although not permitted to do so by the license's terms. The University, having fully performed its contractual obligation and faced with Ligand's refusal to honor its payment obligations under the 1992 Agreement, had no recourse but to file suit, and did so in New York State Court. (*See* Complaint filed in *The Rockefeller University v. Ligand Pharmaceuticals, Inc.,* Case No. 08/600638, filed at 9:02 a.m. EST on March 4, 2008, in the Supreme Court of the State

of New York in the County of New York (hereinafter, the "New York Complaint"), attached as Exhibit 1 to the accompanying Declaration of Anat Hakim ("Hakim Decl.")),

Under Section 2.1 of the 1992 Agreement, the University granted Ligand a sole exclusive world-wide license, under the broadly-defined Licensed Patent Rights and Technical Information of the University "to make, have made, use and sell Products or practice Processes." (*See* the 1992 License Agreement, attached as Exhibit 2 to the Hakim Decl.) The license related to pioneering technology, which the New York Complaint describes in detail and which is referred to herein as the "STATs Pathway technology." The STATs Pathway technology was discovered by Professor Darnell. Under Section 1.4 of the 1992 Agreement, the license grant to Ligand included an exclusive world-wide license to all developments of Professor Darnell's laboratory relating to the STATs Pathway technology, existing as of the effective date of the 1992 Agreement and for five years thereafter. In connection with the 1992 Agreement, Professor Darnell and members of his laboratory did in fact provide information to Ligand for years regarding the STATs Pathway technology. Over the course of several years, Dr. Darnell provided essential technical information, materials and insight to Ligand relating to the STATs Pathway technology. In addition, the University filed several patent applications and was issued several patents, describing aspects of its pioneering STATs Pathway technology. The technical information and expertise about STATs Pathway technology acquired by Ligand from the University pursuant to the 1992 Agreement was essential to the development of, among other things, a high throughput screen ("HTS") to identify cytokine agonists. The HTS was key to the identification and development of pharmaceutical drug candidates. *(See* Hakim Decl., Exhibit 1 at ¶¶12 and 13).

In return for the University's exclusive world-wide license to this pioneering STATs Pathway technology, Ligand obligated itself to:

    a.   "diligently seek to develop Products and/or Processes" using or based on the STATs Pathway technology provided to it under the 1992 Agreement (Section 2.7 of the 1992 Agreement);

    b.   make certain cash payments to the University during the first five years of the Agreement and to give the University an equity interest in Ligand (Sections 2.2 and 2.3 of the 1992 Agreement); and

    c.   pay the University a portion of any payments Ligand received from any third party "to secure the right to use Technical Information or to sell Products or Processes," (Section 2.5 of the 1992 Agreement*)* and a royalty on Ligand's own "Net Sales of Products and on its net revenues . . . received from performance of Processes for a third party."  (Section 2.4 of the 1992 Agreement).

(*See* Hakim Decl., Exhibit. 1 at ¶14, Exhibit 2).

The parties' dispute centers on the language of Sections 2.4 and 2.5 of the 1992 Agreement, which address Ligand's payment obligations as to the University's share of milestone and royalty payments from third parties (Section 2.5) and Ligand's royalty payment obligations to the University based on Ligand's own sales of Products or performance of Processes (Section 2.4).  (*See* Hakim Decl., Exhibit *2*).  In addition, the parties dispute whether Ligand's repeated attempts to terminate the 1992 Agreement, first on August 9, 2007, and then on March 13, 2008, were effective.  The University contends that neither termination is effective under the express termination provisions of the 1992 Agreement.  (*See Id;* Ligand's March 13,

2008 letter of termination, attached as Exhibit 3 to the Hakim Decl.; and the University's March

17, 2008 letter rejecting Ligand's termination, attached as Exhibit 4 to the Hakim Decl.).  Any

judicial determination of these disputed contract terms will be made pursuant to New York law

as the 1992 Agreement states that it "shall be interpreted and governed in accordance with the

laws of the State of New York."  (*See* Hakim Decl., Exh. 2, Section 13).

The parties have engaged in discussions in an attempt to resolve their dispute without

litigation for some time.  On October 10, 2007, the parties entered into a Tolling Agreement,

which was effective through January 31, 2008.  (*See* Hakim Decl., Exh. 1 at ¶32).  On January

17, 2008, the parties amended the Tolling Agreement, extending the period through March 3,

2008.  (*See Id.* at ¶34).  During these discussions, the University's counsel informed Ligand's

counsel that, absent a settlement, the University would file suit against Ligand for breach of the

1992 Agreement after the Tolling Agreement expired in order to preserve the University's

claims.

Upon the expiration of the Tolling Agreement, the University filed suit in New York

State Court.  Some five and a half hours later, and in a clear (but failed) attempt to beat the

University to the courthouse, Ligand filed its Declaratory Judgment action in the Southern

District of California.  (hereinafter, the "California Declaratory Judgment Complaint" filed at

8:33 a.m. PST/11:33 a.m. EST on March 4, 2008).[1]  All of the claims for relief in Ligand's

California Declaratory Judgment Complaint are under the Declaratory Judgment Act, 28 U.S.C.

§§ 2201, et seq.  Specifically, Ligand seeks a declaration as to (1) the applicability and scope of

---

[1] On March 4, the University also completed service of process on Ligand's New York
agent.  Two days later, on March 6, the University was served with Ligand's California
Declaratory Judgment Complaint.

two defined terms in the 1992 Agreement ("Licensed Patent Rights" in Section 1.3 and

"Technical Information" in Section 1.4) as they apply to Ligand's payment obligations under

Sections 2.4 and 2.5; and (2) whether the 1992 Agreement has been terminated and the nature of

any rights terminated.  (*See* California Declaratory Judgment Complaint attached as Exhibit 5 to

the Hakim Decl.).  All of these are questions governed by New York State law.

On March 14, 2008, Ligand filed a Notice of Removal, removing the University's New

York State case to this Court.  (*See* Ligand's March 14, 2008 Notice of Removal, attached as

Exhibit 6 to the Hakim Decl.).  On March 21, 2008, Ligand filed its Motion in this Court to

Dismiss, or, in the Alternative, to Transfer to the Southern District of California.  On March 26,

the University filed a Motion in the Southern District of California to Dismiss, or, in the

Alternative, to Stay or Transfer that case to this Court.  (*See* the University's March 26, 2008

Motion, attached as Exhibit 7 to the Hakim Decl.).  As part of its motion in the Southern District

of California, the University asked the California court to defer to this Court –the Court in which

the actual controversy is pending and the location of the first-filed action – for a ruling on

whether this case should remain in New York.

This Court is the proper forum to determine the parties' contract dispute.  In addition to

this being the first-filed action, the Southern District of New York routinely applies and

interprets New York law, as required here under the 1992 Agreement.  The University is a New

York not-for-profit education corporation, with its principal place of business in New York, New

York.  (*See* accompanying Declaration of James Lapple ("Lapple Decl.'), ¶3).  Ligand, a for-

profit company, has voluntarily registered to do business in New York.  (*See* Ligand's March 21

Motion at Exh. D)  Professor Darnell, who is 82 years old and a key witness for the University,

resides and works in New York.  Certain key former members of Dr. Darnell's laboratory,

including Dr. David Levy, currently at NYU, and others, who worked on the pioneering STATs Pathway technology with Dr. Darnell and were involved in providing information to Ligand under the 1992 Agreement, continue to work in New York. These third parties, who are subject to this Court's subpoena power but are not subject to the subpoena power of the Southern District of California, would testify about critical early meetings with, and information provided to, Ligand by the University under the 1992 Agreement. Other third-party witnesses, including William Griesar, who currently resides in Maine, and who was formerly with the University and involved in the negotiations of the 1992 Agreement, would also be expected to testify. Still another key third-party witness, SKB, Ligand's exclusive sublicensee under the 1992 Agreement, is located on the East Coast, in Philadelphia. SKB is the entity to which Ligand exclusively sublicensed the University's technology in 1994 and SKB witnesses, all third-parties, are expected to be key witnesses regarding the University-licensed technology that was involved in the identification and development of Promacta® and other products in the pipeline. Unlike the Southern District of California, these third-parties are subject to this Court's subpoena power, and in any event, New York is a far more convenient forum for these potential witnesses. In addition, this New York action will resolve not only the contract issues under New York law and actual damages sought by the University, but also the very issues raised by Ligand in its California declaratory action. These factors and others discussed below warrant denial of Ligand's Motion.

<u>**ARGUMENT**</u>

1.    **THE COURT SHOULD DENY LIGAND'S MOTION TO DISMISS THIS CASE**

    a.    **The Court Has Personal Jurisdiction Over Ligand.**

In order for a New York court to exercise personal jurisdiction over a nonresident defendant, the Court makes two separate inquiries, one statutory and the other constitutional. The New York long-arm statute provides that the Court may exercise personal jurisdiction over a nonresident who:

> (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state…; or (3) commits a tortious act without the state causing injury to person or property within the state…; if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or (4) owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302 (2007). If the New York long-arm statute confers jurisdiction, the Court then must determine whether exercising such jurisdiction would comport with the due process clause of the Fourteenth Amendment. *See Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997). Here, the Court has personal jurisdiction over Ligand on both fronts.

    i.    <u>The Court Has General Jurisdiction Over Ligand</u>.

Based solely on its registration to do business in New York (and notwithstanding other extant bases for this Court to exercise personal jurisdiction over Ligand), Ligand is subject to general personal jurisdiction in New York. It is established law that a foreign corporation's authorization to do business in New York and designation of an agent for service of process is consent to in personam jurisdiction. *See Augsbury Corp. v. Petrokey Corp.*, 470 N.Y.S.2d 787, 789, 97 A.D.2d 173 (3d Dep't 1983) (citations omitted); *Iyalla v. TRT Holdings, Inc.*, No. 04

Civ. 8114, 2005 WL 1765707, *3 (S.D.N.Y. July 25, 2005) ("Under New York law, any corporation registered to do business within the state is subject to personal jurisdiction in the state.").[2]  Ligand has been registered to do business in New York since 1998 and its registration continues to be active to this day.  (Ligand's March 21 Motion at Exh. D).  Based on this fact alone, this Court has personal jurisdiction over Ligand.

In addition, by Ligand's own admission, it has been engaging in continuous commercial sales activities in New York from 1998 to 2007.  (Ligand's March 21 Motion at p. 2 and Exh. C). Moreover, while Ligand now claims that its commercial activities in New York ceased as of 2007, the University is aware of at least one instance -- in  September 2007 -- in which senior Ligand executives traveled to New York to meet with the University in connection with this dispute.  (*See* Hakim Decl. at ¶11).  The University is also aware of at least one instance – in March 2008 – in which Ligand's President was scheduled to attend meetings and an investor conference in New York.  (*See Id.*).  Moreover, based on an Aug. 8, 2007 press release, Ligand was scheduled to make at least two presentations at healthcare conferences in New York in 2007 -- at the Bear Stearns 20th Annual Healthcare Conference in New York, September 10-11, and at the Natexis Bleichroeder Healthcare Conference in New York, October 8, 2007.  (See Hakim

---

[2] Although two district court decisions reached the contrary conclusion (one of which is the only case cited by Ligand in its Motion, the substantial majority of cases echo *Augsbury*. Indeed, subsequent New York district court decisions have expressly questioned the reasoning of the two contrary cases, and then reached the conclusion that filing for authorization to do business in New York is, by itself, sufficient to create personal jurisdiction.  *See Chong v. Healthtronics, Inc.*, No. CV-06-1287, 2007 WL 1836831, at *6, *6 n.5 (E.D.N.Y. June 20, 2007) ("*Wright* and *Bellepointe* are not persuasive in light of the majority of federal district courts and New York courts which hold that a filing for authorization to do business in New York is sufficient to subject a foreign corporation to general personal jurisdiction in New York.").

Decl. at Exh. 10). In addition, Ligand was also scheduled to present at the BIO CEO and Investor Conference in New York on Feb. 12, 2008. (*Id.*)

Based on all of the above, Ligand's Motion seeking the dismissal of the University's lawsuit under Rule 12(b)(2) should be denied.

ii.     The Court Has Specific Jurisdiction Over Ligand.

This Court also has specific jurisdiction over Ligand because the University's claims in this lawsuit arise out of Ligand business transacted in New York. In other words, Ligand has purposely availed itself of the privilege of conducting activities within New York, and has thus invoked the benefits and protections of New York law. *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104-05 (2d Cir. 2006). To establish specific jurisdiction over Ligand, it must be shown that this suit arises out of or is related to Ligand's contacts with New York. *See Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 466-67, 522 N.E.2d 40 (N.Y. 1988) (setting forth test for specific jurisdiction); *See also McGowan v. Smith*, 52 N.Y.2d 268, 272- 73, 419 N.E.2d 321 (N.Y. 1981) (a suit arises out of a business transaction under §302(a)(1) when there is a "substantial relationship" between the cause of action and the New York transaction). Notably, §302(a)(1) is a single transaction statute. *See e.g. Kreutter*, 71 N.Y.2d at 467 (Section 302(a)(1) "is 'a single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted) (citations omitted). Here, there are several grounds for this Court to exercise specific jurisdiction over Ligand.

The 1992 Agreement is the focus of this lawsuit. The Agreement entitles the University to receive milestone and royalty payments in exchange for the exclusive world-wide license to Ligand of STATs Pathway technology. Beginning in 1992, and for five years thereafter, the 1992 Agreement obligated the University to, and the University did, provide Ligand with technical data, information processes, materials and know-how developed in the laboratories of Dr. Darnell at the University or Dr. Levy at New York University. (Hakim Decl. at Exh. 2). Ligand made certain preliminary payments to the University in New York, but the parties' dispute soon arose after the University fully performed under the 1992 Agreement, and Ligand refused to pay the University the payments due to it under the 1992 Agreement.

Prior to entering into the 1992 Agreement, and in connection with the parties' negotiations, Ligand representatives traveled to New York on at least one occasion to discuss Ligand's business proposal to the University. (*See* June 17, 1992 letter from the University's William H. Griesar to Ligand's President David Robinson and Dec. 22, 1992 letter from Dr. Darnell to Ligand's Robert Stein, attached as Exh. 8 to the Hakim Decl.). Such an entry into New York by a non domiciliary defendant for a preliminary meeting or contract negotiation satisfies the "transacting business" provision of Section 302(a)(1). *See SAS Group, Inc. v. Worldwide Inventions, Inc*., 245 F.Supp.2d 543, 548-50 (S.D.N.Y. 2003); *Goldstein v. CTT Mobile Mgmt. Servs., Inc.,* No. 84 Civ. 824, at *4, 1985 WL 321, (S.D.N.Y. Feb. 26, 1985) ("A long line of cases has established that §302(a)(1) permits the assertion of jurisdiction over a defendant who has engaged in meetings or precontractual negotiations in New York, so long as those negotiations significantly advance or are essential to the formation of an agreement.").

After entering into the 1992 Agreement, Ligand representatives traveled to New York on at least one other occasion in order to meet with Dr. Darnell and members of his lab. (*See*

January 20, 1993 fax from Lois Cousseau of Dr. Darnell's office to Ligand's Dr. John Rosen, attached as Exh. 9 to the Hakim Decl.). Moreover, and as set forth above, in connection with the parties' dispute, Ligand representatives traveled to New York in September 2007 for company business and also in order to meet with University representatives to discuss the parties' relationship.

This Court, the Second Circuit and the Federal Circuit, have all held that where the parties dispute their respective rights under a license agreement, a court determining whether personal jurisdiction exists must consider a variety of factors, including: (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; and (iii) whether the contract requires the licensee to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state. *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.,* 98 F.3d 25, 29 (2d Cir. 1996) (citations omitted). As set forth above, all of these criteria are satisfied here: Ligand has an on-going contractual relationship with the University pursuant to the 1992 Agreement; after executing the 1992 Agreement, Ligand visited New York for the purpose of meeting with Dr. Darnell and members of his lab; and Ligand was and is required by the 1992 Agreement to send notices and payments under the Agreement into New York. (Hakim Decl. at Exh. 2). The fact that Ligand entered into the 1992 Agreement with the University, and that the Agreement contains a New York choice of law provision, provides additional grounds for finding that this Court has personal jurisdiction over Ligand. *See Burger King Corp., v. Rudzewicz, 471 U.S. 462, 479-82, (1985)* (finding that Florida court could constitutionally assert

personal jurisdiction over party with no physical presence in Florida when dispute grew out of the party's contractual relationship with Florida corporation and the contract contained choice-of-law provision specifying that disputes were to be governed by Florida law); *Lancaster v. Zufle*, 165 F.R.D. 38, 42 (S.D. N.Y. 1996) (New York choice of law provision is significant factor).

        iii.    This Court's Exercise Of Personal Jurisdiction Over Ligand Would Be Consistent With Constitutional Requirements Of Due Process.

Based on the above, this Court's exercise of personal jurisdiction over Ligand would be consistent with the constitutional requirements of due process. See *International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)* (outlining minimal contacts that a defendant must have with a forum state for an exercise of personal jurisdiction over the defendant to be consistent with federal due process). Ligand purposefully availed itself of the privilege of conducting activities in New York, thus invoking the benefits and protection of New York's laws. *See D.H. Blair & Co.* at 104-05 (2d Cir. 2006). Ligand's Motion to Dismiss this action for lack of personal jurisdiction therefore should be denied

        b.    **Venue Is Proper In This Court.**

Venue is proper in this Court pursuant to 28 U.S.C. §1391. In its removal notice, Ligand alleged that this Court has subject matter jurisdiction based on diversity and federal question jurisdiction.[3] Although styled as a motion to dismiss under Rule 12(b)(3), Ligand does not assert any bases for dismissing this action for improper venue. Venue is in fact proper in this District under 28 U.S.C. §§1391. As set forth above, Ligand is both subject to personal jurisdiction and

---

[3] The University disputes that this Court has subject matter jurisdiction based on federal question.

"found" here.  In addition, a substantial part of the events or omissions giving rise to the claim occurred in New York where the licensed technology was developed, and the University believes, at SKB in Philadelphia as well, where research, identification and development of Promacta® occurred.  Venue is proper in this District.

      c.    **The University's Lawsuit Is First-Filed.**

As recently as last month, the Second Circuit reaffirmed the rule that "[w]here there are two competing lawsuits, the first suit should have priority."  *Employers Ins. of Wausau et al v. Fox Entm't Group, Inc., et al,*  ---F.3d----, No. 06-4652-cv, 2008 WL 817509, * 3 (2d Cir. Mar. 27, 2008) (quoting *First City Nat'l Bank & Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir. 1989)).  Under the first-filed rule, when cases involving the same parties and issues have been filed in two different districts, there is a presumption that the first-filed suit should proceed.  *See 800-Flowers, Inc. v. Intercont'l Florist*, 860 F.Supp. 128, 131 (S.D.N.Y. 1994) ("[t]here is a strong presumption in favor of the forum of the first filed suit."); *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1025 (2d Cir. 1991); *Berisford Capital Corp. v. Central States, Se. & Sw. Area Pension Fund*, 677 F.Supp. 220, 222 (S.D.N.Y. 1988).  The first-filed rule is a "'presumption' that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action."  *Employers Ins. of Wassau,*. at *3 (quoting *Berisford Capital Corp.*, 677 F. Supp. at 222 (S.D.N.Y. 1988)).  Because, as set forth below, Ligand can not demonstrate such "desirability," this first-filed action should not be dismissed or transferred.[4]

Neither of the two exceptions to the first-filed rule are applicable here: (1) as set forth below, the "balance of convenience" does not favor Ligand's second-filed action, and (2) Ligand

---

[4] As discussed above, the University has moved the Southern District of California to dismiss, stay or transfer Ligand's California action in favor of this New York action.

has neither asserted nor are there "special circumstances" that warrant giving priority to Ligand's second-filed suit.  See e.g. *Williams Advanced Materials, Inc. v. Target Tech. Co., LLC*, No. 03-cv-276-A, 2007 WL 2245886 at * 5-6 (W.D.N.Y. Aug. 1, 2007).  Further as to the "balance of convenience" analysis, "[a]n even or inconclusively tilted 'balance of convenience' would ordinarily support application of the first-filed rule."  *Employers Ins. of Wassau*, at *3 (quoting *Columbia Pictures Indus., Inc. v. Schneider,* 435 F. Supp. 742, 751 (S.D.N.Y. 1977)).

d.    **Ligand's Declaratory Action Is Disfavored.**

Ligand's California complaint requests only declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.  In its motion to dismiss, stay or transfer Ligand's Southern District of California action, the University has asked that court to exercise its discretion and dismiss Ligand's declaratory action, which appears to have been filed by Ligand solely because it was forewarned by the University that the University would file suit to preserve its claims after the Tolling Agreement expired.  Ligand's California declaratory action is an unsuccessful attempt to preempt the University's New York action for actual damages, and should not be allowed to proceed.  Moreover, this New York action presents issues of New York State law relating to Ligand's breach of the 1992 Agreement, and raises issues to be decided and interpreted under New York law.  As the Court in which the first-filed suit for actual damages and relief is pending, and given that New York law will govern this dispute, this Court should allow this action to proceed in New York.  *See Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997); *Allstate Ins. Co. v. Valley Physical Medicine & Rehabilitation P.C.*, 475 F.Supp.2d 213, 233-34 (E.D.N.Y. 2007).

2.     **THE COURT SHOULD DENY LIGAND'S MOTION TO TRANSFER THIS CASE**

Transfer of civil actions is governed by 28 U.S.C. §1404(a), which states:

For the convenience of parties and witness, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Faced with a motion to transfer under Section 1404(a), the issue for the Court is to balance convenience and justice and determine whether these factors favor transfer. *In re Nematron Corp. Sec. Litig.*, 30 F.Supp.2d 397, 406 (S.D.N.Y. 1998). A decision to transfer an action under Section 1404(a) rests within the sound discretion of the court and is made on a case-by-case basis. *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d Cir. 1992).

In determining whether an action should be transferred, courts undertake a two-step analysis. First, the court determines whether the case could have been brought in the proposed forum. Second the court determines whether the transfer would promote convenience and fairness weighing (1) the convenience of the parties, (2) the convenience of the witnesses and (3) the interests of justice. *See Coker v. Bank of America*, 984 F.Supp. 757, 764 (S.D.N.Y. 1997). In exercising its discretion under § 1404(a), courts consider the following factors: "(1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of circumstances." *See Pilates, Inc. v. Pilates Inst. Inc.*, 891 F.Supp. 175, 183 (S.D.N.Y. 1995).

a.  <u>Transfer Of This Case to the Southern District of California Is Not Proper</u>.

i.    The Convenience of the Parties and Witnesses And The Availability Of <u>Process For Unwilling Witnesses.</u>

The Southern District of New York is a more convenient venue for the University and for key non-party witnesses.  The University's principal place of business is in New York City.  Additionally, key non-party witnesses are located in or near New York.  While courts may consider the convenience of party witnesses, ***the convenience of non-party witnesses is the more important factor.  See*** *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F.Supp.2d 282, 286 (S.D.N.Y. 2004).  Here, New York is far more convenient for key witnesses, including Dr. Darnell, an 82 year old scientist, as well as non-party former members of his laboratory, non-parties that were involved in negotiations of the 1992 Agreement, and Ligand's exclusive sublicensee SKB (in Philadelphia).  These individuals work in New York, are subject to the subpoena power of the New York court or would be inconvenienced by this case proceeding in California.  When considering the location of non-parties, courts are instructed to examine the importance of the non-party witnesses as opposed to their sheer number.  *Id.*  (stating that "a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum.  Instead, the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide.")  Given that the University provided critical information to Ligand in the early years of the 1992 Agreement – information that Ligand then sub-licensed to SKB and without which Ligand and SKB could not have developed the technology at issue – and that Dr. Darnell and his former laboratory members were intimately and actively involved in developing and providing that information to Ligand, their testimony will be important .  Likewise, SKB, which is within 100 miles of New York City, is a material non-party witness.  In support of its Motion, Ligand has provided a list of

individuals it claims worked on the technology in dispute. This list consists overwhelmingly of Ligand employees, for whom subpoena process is not needed. Ligand also has not indicated which of its employees worked on the critical aspects of the pharmaceutical molecules at issue. In any event, the handful of non-party witnesses listed are former Ligand employees who may still have obligations to Ligand, or individuals for whom New York is a more convenient forum (this is the case, for example, with respect to former University employee William Griesar). This factor favors New York.

The University's unique characteristics should also be taken into account here. For the University, the cost difference between trying this case in the Southern District of New York as compared to the Southern District of California will be significant. The University is a not-for-profit education corporation, with a focus on biomedical research. The increased cost of litigating in San Diego would have a significant financial and non-financial impact for the University. In contrast, Ligand is a public biotech company, with major corporate partners, that does business outside of California, including New York, and can litigate in any federal district court in the country. *See Lynch ex rel. v. Nat'l Prescription Adm'rs*, No. 03 Civ. 1303, 2004 WL 385156, *4 (S.D.N.Y. March 1, 2004) (holding that transfer was not warranted and noting the disparity in the relative means between a non-profit organization and a large corporation); *Schreiber v. Eli Lilly and Co*., No. Civ. A. oscv 2616, 2006 WL 782441, at *1, *9 (E.D. Pa. March 27, 2006) (holding that corporation is better able to incur the costs of litigating in a foreign venue then a not-for-profit university); *Wang v. L.B. Int'l Inc.*, No. C04-2475JLR, 2005 WL 2090672, at *3 (W.D. Wash. Aug. 29, 2005) (holding that under the reduced cost of litigation prong defendant's increased costs in securing witnesses, transporting documents, records, and other evidence to district outweighed plaintiffs costs in coming to transferee

18

district).  It is likely unavoidable that one of the parties will incur substantial costs whether this case is tried in New York or San Diego, but this factor tips in favor of keeping the case in New York.

> ii.    Location Of The Events Giving Rise To The Suit Favors New York.

The parties' negotiations of the 1992 Agreement were largely conducted by mail or electronic means, as was the execution of the 1992 Agreement.  In the months leading up to the execution of the 1992 Agreement, however, Ligand representatives traveled to New York to discuss the terms of the 1992 Agreement and to obtain information about the technology that was ultimately to be licensed.  (Hakim Decl. Exh. 8).  This factor slightly favors New York.

> iii.    A New York Court Is More Familiar With New York Law.

Given that the 1992 Agreement is governed by New York law, considerations of which court is most familiar with the governing law strongly favors keeping this action in the Southern District of New York.  *See Howard v. Four Seasons Hotels Ltd.*, No. 96 Civ. 4587, 1997 WL 107633, at *3 (S.D.N.Y. March 10, 1997) (finding that a district court is better suited to hear a case applying its own state's law because it is "presumably more familiar" with those laws).

> iv.    Plaintiff's Choice of Forum.

In the Second Circuit, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Ford Motor Co. v. Ryan*, 182 F.2d 329, 330 (2d Cir. 1950) (internal citations omitted).  *See also Quan v. Computer Sciences Corp.*, Nos. CV 06-3927, CV 06-5100, 2008 WL 89679 at *3  (E.D.N.Y. Jan. 7, 2008) (noting that "[c]ourts generally accord considerable deference to a plaintiff's choice of forum and avoid overriding it in the absence of other factors that clearly favor transfer.").  Not only is the

University's choice of this forum to be accorded significant weight, but because it is the first-filed action, the weight accorded to the choice of this forum is even greater, particularly when weighed against a declaratory judgment action that was preemptively filed.

> v.     The Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses And The Relative Ease Of Access To Sources of Proof Favor New York.

Courts favor forums where non-party witnesses fall under the court's subpoena power. *See Commercial Solvents Corp. v. Liberty Mut. Ins. Co.*, 371 F.Supp. 247, 250 (S.D.N.Y. 1974) (holding that a court's subpoena power over key witnesses was an important consideration in determining whether to transfer venue). *See also Crutchfield v. Country Wide Home Loans*, No. 02 Civ. 9092, 2003 WL 102879 at *2 (S.D.N.Y. Jan. 10, 2003) (stating "[t]he location of such witnesses [ ] within the Court's subpoena power is an essential consideration in determining the appropriateness and convenience of plaintiff's choice of forum.")  For non-party witnesses, the court's subpoena power extends anywhere within the district and/or one hundred miles of the place of trial. *See Fed.R.Civ.P. 45 (b)(2)(A),(B).*  As discussed, above, critical third party witnesses reside in New York City or within subpoena range of the Southern District of New York and would be beyond the Southern District of California's subpoena power.  In contrast, the vast majority of Ligand's witnesses are Ligand employees for whom compulsory process is not needed because a party can compel testimony of its employees at trial.  *See e.g. Aerotel v. Sprint Corp.*, 100 F.Supp.2d 189, 197 (S.D.N.Y. 2000); *Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F.Supp.2d 370, 374-75 (S.D.N.Y. 2006).  This factor favors New York.

With respect to the location of relevant documents and ease of access to sources of proof, the University's documents are located in New York, as are documents, such as laboratory notebooks, in the custody and control of the third parties.  Given the availability of electronic means for document collection and production, however, the physical location of

documents is a less significant factor in the transfer analysis. *See Coker* at 766 (holding that the location of documents factor is neutral where documents could be electronically generated or easily sent in "today's era of photocopying, fax machines and Federal Express.")

     vi.  <u>Trial Efficiency Favors the Southern District of New York</u>.

     The inquiry under this factor is whether a trial may be speedier in another court because of its less crowded docket. *See Billing v. Commerce One, Inc.,* 186 F.Supp.2d 375, 378 (S.D.N.Y. 2002). Given the heavy criminal case docket in the Southern District of California, the time to trial in this Court is likely to be faster. This factor weighs in favor of keeping this case here.

**CONCLUSION**

     For the reasons set forth above, The Rockefeller University respectfully requests that this Court deny Ligand's Motion to Dismiss, or, In the Alternative, to Transfer to the Southern District of California.

Dated:  April 7, 2008                    FOLEY & LARDNER LLP
        New York, New York


                                   By:  /s/ Peter N. Wang_____
                                        Peter N. Wang (PW 9216)
                                        Douglas S. Heffer (DH 6082)
                                        90 Park Avenue
                                        New York, New York 10016-1314
                                        Tel: (212) 682-7474
                                        Fax: (212) 687-2329

                                        Anat Hakim (AH 4398)
                                        3000 K Street, NW-Suite 500
                                        Washington, DC 20007-5101
                                        Tel: (202) 672-5300
                                        Fax: (202) 672-5399

                                        *Attorneys for Plaintiff The Rockefeller
                                        University, a New York not-for-profit education
                                        corporation*