UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

08-CV-2775 (PKC) (HP)

THE ROCKEFELLER UNIVERSITY, a
New York not-for-profit corporation,

      Plaintiff,

    v.

LIGAND PHARMACEUTICALS
INCORPORATED, a Delaware corporation,

      Defendant.

REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT
LIGAND'S MOTION TO DISMISS PURSUANT TO FRCP 12 (B) (2), OR, IN THE
ALTERNATIVE, TO TRANSFER TO THE SOUTHERN DISTRICT OF CALIFORNIA

**GREENBERG TRAURIG, LLP**
Attorneys for Defendant Ligand
Pharmaceuticals Incorporated
200 Park Avenue
New York, New York 10166
(212) 801-9200

## <u>TABLE OF CONTENTS</u>

**Page #s**

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT...........................................................................................................2

A.    This Court Lacks General Personal Jurisdiction Over Ligand ...........2

B.    This Court Lacks Specific Jurisdiction Over Ligand ........................3

C.    Transfer To The Southern District Of California Should Be
       Granted .............................................................................................4

       1.    The Events Giving Rise To The Suit Occurred In
              California...............................................................................5

       2.    California Would Be More Convenient To The Parties.........5

       3.    California Would Be More Convenient To The
              Witnesses...............................................................................6

       4.    Most Of The Relevant Proof Is Located In California...........7

       5.    Many More Witnesses Can Only Be Served Process In
              California...............................................................................8

       6.    The Plaintiff's Choice Of Forum Favors Transfer ................8

       7.    The Forum's Familiarity With Governing Law Is
              Irrelevant In This Case .........................................................9

       8.    Transferring This Case To California Would Promote
              Trial Efficiency.....................................................................9

       9.    The Interest Of Justice Would Be Better Served In
              California...............................................................................10

CONCLUSION .....................................................................................................10

# TABLE OF AUTHORITIES

**Page #s**

*Ahava Dairy Products Corp. v. Swiss Heritage Cheese, Inc.*,
No. CV-02-4045 (DGT), 2002 WL 31988778 (E.D.N.Y. Dec. 27, 2002) ................... 4

*Arrow Electronics, Inc. v. Ducommun Inc*,
724 F. Supp. 264 (S.D.N.Y. 1989) ................................................................. 5, 8

*Ashe v. Pepsico, Inc.*
443 F.Supp. 84 (S.D.N.Y. 1977) ...................................................................... 4

*Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*,
975 F. Supp. 562 (S.D.N.Y. 1997) .................................................................... 2

*Cavalier Label Co. v. Polytam, Ltd.*,
687 F. Supp. 872 (S.D.N.Y. 1988) .................................................................... 2

*CutCo Industries, Inc. v. Naughton*,
806 F.2d 361 (2d Cir. 1986) ............................................................................ 2

*G. Angel Ltd. v. Camper & Nicholsons USA, Inc*,
2008 WL 351660 (S.D.N.Y 2008) .................................................................... 6

*General Instrument Corp. v. Tie Mfg., Inc.*,
517 F. Supp. 1231 (S.D.N.Y. 1981) .................................................................. 2

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) ...................................................................................... 3

*Herbert Ltd Partnership v. Electronic Arts Inc.*,
325 F. Supp. 2d 282 (S.D.N.Y. 2004) ............................................................... 6

*McShan v. Omega Louis Brandt Et Frere, S.A.*,
536 F.2d 516 (2d Cir.1976) ............................................................................. 2

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
84 F.3d 560 (2d Cir. 1996) .............................................................................. 3

*Painewebber Inc v. Westgate Group, Inc.*,
748 F. Supp. 115 (S.D.N.Y., 1990) ................................................................... 4

*Royal Ins. Co.*,
2002 WL 31385815 ........................................................................................ 9

## TABLE OF AUTHORITIES
### (Cont'd.)

Page #s

## OTHER AUTHORITIES

N.Y. Bus. Corp. Law § 1301 ................................................................................................ 2

Fed. R. Evid. 408 ................................................................................................................ 2

## PRELIMINARY STATEMENT

Ligand Pharmaceuticals, Incorporated ("Ligand") respectfully submits this reply memorandum of law in further support of Ligand's Motion to Dismiss, or, in the Alternative, to Transfer to the Southern District of California (the "Motion") and in response to Rockefeller University's ("Rockefeller's") opposition to the Motion (the "Opposition").

This case should be dismissed or transferred to California. The case should be dismissed because, despite Rockefeller's improper attempt to use Ligand's settlement efforts as evidence, Ligand has no continuous or systematic business in New York and, thus, is not subject to general personal jurisdiction in New York. Furthermore, Rockefeller's claims arise out of Ligand's conduct in San Diego. Rockefeller seeks payment for an alleged breach of the License, alleging certain compounds were discovered and/or developed using Rockefeller's Technical Information and/or Patent Rights. However, Ligand's independent discovery and initial development of the compounds occurred entirely outside of New York. Ligand performed all its work related to the discovery and development of the compounds in San Diego. Accordingly, Ligand is not subject to specific jurisdiction in New York.

California is also the more convenient forum. None of the relevant factors support the conclusion that New York is the best venue for this lawsuit. Rockefeller, not Ligand, is better able to litigate in a foreign venue; Rockefeller has well over ten times Ligand's annual revenues and employees and has substantially greater available assets. Furthermore, contrary to Rockefeller's allegations, the vast majority of the 52 witnesses identified by Ligand are **not** current employees of Ligand. Most of these witnesses are located in California, beyond Ligand's control and unlikely to testify unless compelled. These witnesses, all knowledgeable of Ligand's development of the compounds in question, far outweigh Rockefeller's four witnesses. Indeed, the few witnesses identified by Rockefeller are expected to be willing to testify in California or are unimportant witnesses. Time to trial is also faster in California, despite Rockefeller's claim to the contrary.

## ARGUMENT

### A.    This Court Lacks General Personal Jurisdiction Over Ligand

Rockefeller does not dispute that Ligand neither sells nor advertises any goods or services in New York and that Ligand has no employees or facilities in New York. *Motion*, at 1. Instead, Rockefeller relies on inadmissible evidence: its attorney states that she "understands" that Ligand executives traveled to New York, for example to meet with Rockefeller in connection with this dispute. *Opposition*, Hakim Decl. at ¶11. She even admits that she has no personal knowledge of these "facts," but rather is aware of them only based on correspondence between the parties made in the context of settlement negotiations. Rockefeller thus improperly attempts to use offers of settlement or compromise in violation of Federal Rule of Evidence 408.[1]

Rockefeller also argues that general jurisdiction exists over Ligand based upon the historic artifact of Ligand's 1998 registration to do business in New York. *Motion*, Exhibit D. The registration is, however, not dispositive here because Ligand had ceased its prior sales activity in New York by the time this lawsuit was filed. In the context of Ligand's present lack of activity in New York, the registration to do business in New York under N.Y.Bus.Corp.Law §1301 is merely ministerial and Ligand is prepared to surrender it.

Ligand's lack of a legal "presence" in New York at the time of suit justifies the rare exception that this Court acknowledged in *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F.Supp. 562, 564 (S.D.N.Y. 1997). *Motion* at 4. While there is an apparent split over whether

---

[1] Ancillary activities, like settlement negotiations, related to the dispute do not comprise the transaction of business and are inadequate to confer jurisdiction. *Cavalier Label Co. v. Polytam, Ltd.*, 687 F.Supp. 872 (S.D.N.Y.1988) (the defendant's visit to New York to discuss the termination of the contract at issue was insufficient to confer jurisdiction over the defendant pursuant to the "transacting business" prong of CPLR § 302[a][1] ); *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 368 (2d Cir.1986), ("attempts to adjust a dispute as to performance of a contract or to discuss differences under an existing contract have no jurisdiction[al] consequences.") (*Citing McShan v. Omega Louis Brandt Et Frere, S.A.*, 536 F.2d 516, 518 (2d Cir.1976]); *General Instrument Corp. v. Tie Mfg., Inc.*, 517 F.Supp. 1231, 1232 (S.D.N.Y.1981) ("the contract was already made, and attempts thereafter to compromise or adjust a dispute as to performance are not sufficient to confer in personam jurisdiction upon the courts of New York with respect to a pre-existing contract over which no jurisdiction existed prior to the settlement attempts.").

mere authorization to do business in a New York subjects a foreign corporation to general jurisdiction, Ligand urges this Court to adopt the better view as articulated in *Bellepointe, Inc.* and hold that registration alone is insufficient to create a presence in New York under C.P.L.R. §301. Because Ligand has no regular, meaningful or permanent business activity in New York, Ligand is not present in New York and is not subject to general jurisdiction.

Rockefeller has failed to establish the minimum contacts necessary to satisfy Constitutional requirements. "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and systematic general business contacts.'" *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir.1996) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)).

**B.    This Court Lacks Specific Jurisdiction Over Ligand**

Rockefeller's claim arises out of research Ligand conducted in San Diego; that research provides no basis to find specific jurisdiction over Ligand in New York. Rockefeller's claims do not arise from the few trips and payment and choice of law provisions that they cite. These facts simply do not establish specific jurisdiction. Ligand provided no goods or services to Rockefeller in New York and, tellingly, Rockefeller does not argue otherwise.

Rockefeller argues that jurisdiction is proper if Ligand engaged in meetings or pre-contractual negotiations in New York that "significantly advance or are essential to the formation of an agreement." *Opposition* at 11. Rockefeller, however, fails to show how Ligand's lone pre-contract trip played any significant role in the negotiations. Rockefeller points to other meetings, held after the 1992 License was signed, but fails to explain how these meetings give rise to this suit. Rockefeller's claims are based on research that Ligand conducted in San Diego, not on unrelated investor meetings.

Rockefeller's reliance on payment and choice of law provisions in the License is also misplaced. The parties did not include a venue clause and the key provision in the License is the license grant that Ligand gave life to by conducting research in San Diego.

There is no substantial relationship between Ligand's extremely limited New York activities and the cause of action. *See, e.g., Painewebber Inc v. Westgate Group, Inc.*, 748 F.Supp. 115, 119 (S.D.N.Y., 1990). As in *Painewebber*, even if Ligand made "a series of frequent telephone calls and telecopies" to New York and attended "one meeting [in New York] during which a modification of the agreement was memorialized," Ligand did not "transact[] business" under the long arm statute. *Id.* "[E]ven if the defendant had been 'transacting business' in New York ... [there was] no 'substantial relationship' between" the defendant's New York activities and the lawsuit. *Id* at 121. Similarly, here, there is no substantial connection between Ligand's New York contacts, which were few and far between, and the alleged violation of the License. As such, Ligand urges this Court to find that it does not have specific jurisdiction over Ligand.

## C.    Transfer To The Southern District Of California Should Be Granted

The transfer factors, discussed below, strongly indicate that the Southern District of California is the best venue for this case. Rockefeller argues that there should be a presumption against transfer in this case because it was first-to-file and serve. But the first-to-file rule is inapplicable (see below) and priority of service is generally irrelevant.[2]

If, as here, two actions are filed in different courts on the same day, a court "cannot resort to the usual rule of thumb according priority to the suit which is first in time . . . [r]ather, the court must look to the balance of convenience between the available forums." *Ashe v. Pepsico,*

---

[2] *See, e.g., Ahava Dairy Products Corp. v. Swiss Heritage Cheese, Inc.*, No. CV-02-4045 (DGT), 2002 WL 31988778 (E.D.N.Y. Dec. 27, 2002) (rejecting the argument that the second-filed case should take priority because of an improper subpoena). Furthermore, Rockefeller received Ligand's complaint the day it was filed, March 4, 2008. Earlier that day, Rockefeller contacted Ligand and proposed the parties complete service "by Federal Express." Rockefeller nonetheless proceeded with personal service on March 4, 2008 (*Opposition* at 5) and refused to treat Ligand's Federal Express service as having the same effective date as Rockefeller's, based on a mechanical problem with the Federal Express plane carrying Ligand's complaint that delayed service by one day. Exhibit A. Rockefeller also argues that Ligand's Declaratory Action is disfavored, but Ligand filed suit because settlement negotiations had failed to reach resolution before the Tolling Agreement expired. There is nothing improper about Ligand seeking judicial protection of its rights.

*Inc.* 443 F.Supp. 84, 85 (S.D.N.Y. 1977). In sum, California will be a much more convenient forum; this convenience outweighs any presumption under the first-to-file rule (if such a presumption even applied).

### 1.    The Events Giving Rise To The Suit Occurred In California

This lawsuit concerns events that occurred in San Diego, as Ligand developed and used its screening assays for the compounds there. Rockefeller ignores this fact and instead argues that Ligand's 1992 trip to New York somehow led to this suit. *Opposition* at 19. Rockefeller's position defies logic as it postulates that a meeting that predated the license led to the breach of that license. Rather, logic dictates that this suit is based on Ligand's research and development activities, not on a pre-contract meeting between the parties. Indeed, "in a motion for transfer, the location of negotiations are not a significant factor as compared to the concern for the convenience of the parties and witnesses." *Arrow Electronics, Inc. v. Ducommun Inc*, 724 F.Supp. 264, 267 (S.D.N.Y. 1989).

### 2.    California Would Be More Convenient To The Parties

Rockefeller, an institution with nearly $2.4 billion in assets, and $414 million in annual revenue (Exhibit B, 2004 Internal Revenue Service Form 990, tax year ending June 30, 2005, for The Rockefeller University, pgs. 1 and 3) argues that because it is a non-profit institution, it is less able to bear the costs of litigating in a foreign forum. The cases Rockefeller cites, however, are based on the premise (accurate in those cases) that the non-profit had less means to incur the costs of litigating in a foreign venue. Ligand has substantially less resources available to it than does Rockefeller,[3] as shown in the following table:

---

[3] Ligand's 2008 revenues are expected to be about $20 million, i.e., less than one-tenth of Rockefeller's. *See* Exhibit C, Ligand's February 20, 2008 press release. Ligand was founded in 1987 and has incurred significant losses since inception; as of December 31, 2007, Ligand's accumulated deficit was $581.5 million. *See* Exhibit D, Ligand's 2007 10-K, filed March 5, 2008, page 16. Ligand has a market capitalization of less than $400 million.

|                                    | Rockefeller     | Ligand            |
|------------------------------------|-----------------|-------------------|
| **Assets or Market Capitalization** | $2.4 billion    | < $400 million    |
| **Annual Revenue**                 | $414 million    | about $20 million |
| **Employees**                      | > 1,000         | < 60              |

### 3.    California Would Be More Convenient To The Witnesses

Most of the key witnesses will be Ligand employees and former employees; they will testify as to how the TPO Compounds were discovered and initially developed. Rockefeller asserts that the vast majority of Ligand's witnesses are Ligand employees, but this is not true. In fact, the exact opposite is true. As seen in the Supplemental Declaration of Audrey Warfield-Graham and attached Exhibit H-1 (Exhibit E attached hereto) forty two (42) former Ligand employees and ten (10) current Ligand employees have information about the development of the potential products and processes that will be relevant to this case.

Rockefeller identified only four witnesses in its Opposition: Darnell, Dr. David Levy ("Levy"), William Griesar ("Griesar"), and "SKB" (now known as Glaxo SmithKline ("GSK")).[4] *Opposition* at 6-7.

Levy and Darnell are expected to testify as to what information was provided to Ligand under the License. Darnell came to San Diego for Ligand's Scientific Advisory Board (SAB) meetings from 1996-2001. *See* Motion, Exhibit E, ¶ 12. Also, the contemporaneous publications and patents will be a much more reliable source of this evidence. Furthermore, the more important part of the equation will be establishing what Ligand did in developing the

---

[4] Rockefeller also makes references to unnamed "others" who worked in Darnell's lab and other unidentified witnesses. These arguments should be discounted as they provide no basis to evaluate relevance. *G. Angel Ltd. v. Camper & Nicholsons USA, Inc*, 2008 WL 351660 at *4, *5 (S.D.N.Y 2008); *Herbert Ltd Partnership v. Electronic Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004).

compounds, which will require the testimony of numerous Ligand employees and former employees.

Rockefeller asserts that Griesar will be relevant because he was involved in negotiating the 1992 License. Griesar is not expected to give any substantive testimony on technical issues, and his convenience should therefore be discounted. Further, if an inquiry into the negotiations becomes a key issue in this case, the testimony of several Ligand former employees will also be needed. For instance, Larry Respess and David Robinson both live near San Diego. *See* Exhibit E, ¶¶ 8-10. In addition, Wendy Tantl, who signed the License for Rockefeller, lives near San Francisco.

Finally, Rockefeller asks the court to consider the convenience of GSK: GSK is in a good position to tolerate any inconvenience, but it need not worry as all of the relevant work was done by Ligand in San Diego and it is unclear how GSK witnesses would be best able to testify as to Ligand's work. Rockefeller refers to Ligand's screening work under the GSK collaboration, but that work was done by Ligand, not GSK. *See* Exhibit F, portion of GSK License, Appendix A, Section B, "Work to be Performed by Ligand."

In view of the above, far more of the important witnesses will find California to be a more convenient forum.

### 4.    Most Of The Relevant Proof Is Located In California

It is undisputed that Ligand's records regarding this dispute are located in San Diego. These documents are expected to be quite substantial, given the years of research conducted by Ligand on the compounds in question. Rockefeller argues that its documents are located in New York, but does not indicate how those documents will be relevant. *Opposition* at 20. Ligand expects that Rockefeller will produce a much more limited set of documents – primarily about communications with Ligand that should also be in Ligand's files. Further, Rockefeller indicates that "documents, such as laboratory notebooks, in the custody and control of third parties" are located in New York. *Id.* This is ambiguous and confusing. Rockefeller indicates neither who

these third parties are, in New York, nor the relevance of the alleged notebooks. Most of the relevant records are in California and few, if any, are in New York.

### 5.    Many More Witnesses Can Only Be Served Process In California

Ligand has identified forty-two (42) former employees who it believes will be important witnesses and who likely will have to be compelled to testify as they have no other reason to do so. Rockefeller, nonetheless, argues that this factor weighs in favor of New York because two of its four witnesses reside in New York City, and a third is within the 100-mile bubble. As to Darnell and Levy, Rockefeller makes no representation that either of these individuals is likely to be an unwilling witness. Darnell clearly has an ongoing relationship with Rockefeller, and likely has a financial stake in this suit. Levy, as an employee of NYU, also has a strong motive to cooperate with this suit, as NYU is entitled to a portion of all royalties paid under the License. *Opposition* at 7 (Levy is "currently at NYU"), *License* at §§2.4-2.5. (NYU receives 10% of all royalties paid to Rockefeller under the license). With regard to GSK, Rockefeller has made no representation that they will be an unwilling witness and has not shown any reason why GSK's testimony will be important to resolution of the current dispute.

It will be more important for a court to have subpoena power over the 52 identified witnesses in California than over the four Rockefeller witnesses within this Court's subpoena power, especially since the Rockefeller witnesses will likely be willing to testify in California and/or are not expected to provide important testimony. Thus, this factor weighs in favor of transfer to California.

### 6.    The Plaintiff's Choice Of Forum Favors Transfer

"[W]here the facts of the action bear little connection to the chosen forum ... plaintiff's choice [is] given reduced significance." *Arrow Electronics, Inc. v. Ducommun Inc,.* 724 F. Supp. 264, 265 (S.D.N.Y. 1989). Moreover, in this case, Ligand's choice of California should trump Rockefeller's choice of New York because Rockefeller's choice creates substantial questions of personal jurisdiction that would require substantial additional discovery. In contrast, if the case

in transferred to the Southern District of California, no such additional discovery would be necessary.

**7.    The Forum's Familiarity With Governing Law Is Irrelevant In This Case**

Rockefeller asserts that this factor strongly argues against transfer, but Rockefeller merely denies without basis Ligand's arguments that New York law may not apply (*Motion* at 11), that there are no complex issues of law and that the federal patent law issues will predominate.    Even if New York law does govern, this factor should be given little weight because there are no complex issues of New York law. *See Royal Ins. Co.*, 2002 WL 31385815, at *8.    Because there are no complex issues of New York law in this case, and because there are much more important factors in this analysis, and because this factor is neutral, this factor should be given little or no weight.

**8.    Transferring This Case To California Would Promote Trial Efficiency**

Rockefeller urges this Court to accept, without any support, the false claim that "given the heavy criminal case docket in the Southern District of California, the time to trial in this Court is likely to be faster." *Opposition* at 21.    The publicly-available Judicial Caseload Profile totally contradicts Rockefeller. *See*, http://www.uscourts.gov/cgi-bin/cmsd2007.pl.    See the table below for information regarding civil cases in the 12-month period ending September 30, 2007:

|  | Southern District of New York | Southern District of California |
|---|---|---|
| **Filing to disposition** | 9.8 months | 5.9 months |
| **Filing to trial** | 25.6 months | 24 months |
| **Caseload** | 24,791 | 3,942 |
| **Caseload per Judge[5]** | 885 | 303 |
| **Vacant Judgeship Months** | 19.1 | 11.6 |

---

[5] Figure derived by dividing caseload figure for each respective District by the number of judgeships for each such District (e.g. SDNY – 24,791/28=885)

9.      **The Interest Of Justice Would Be Better Served In California**

Rockefeller did not dispute this factor. As Ligand argued in the Motion, justice would be better served by allowing this action to proceed in California where Ligand will be able to obtain the live testimony, rather than video depositions, of its various key witnesses.

## CONCLUSION

For the reasons above, Ligand is not subject to personal jurisdiction in this Court, and this case should be dismissed in favor of the ongoing suit in California. In the alternative, the Southern District of California is a substantially more convenient venue for this action, and Ligand urges this court to transfer this action thereto.

Dated: New York, New York
       April 17, 2008

**GREENBERG TRAURIG, LLP**

By:_____
        Simon Miller (SM-6728)
        200 Park Avenue
        New York, New York 10166
        (212) 801-9200
        *Attorneys for Defendant*

        -and-

        KNOBBE MARTENS, OLSON & BEAR, LLP
        Darrell Olson
        2040 Main Street, 14th Floor
        Irvine, CA  92614
        (949) 760-0404
        *Of Counsel for Defendant*


        KNOBBE MARTENS, OLSON & BEAR, LLP
        Joseph M. Reisman
        Ali S. Razai
        550 West C Street
        Suite 1200
        San Diego, CA  92101
        *Of Counsel for Defendant*

-10-