UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

THE ROCKEFELLER UNIVERSITY,
a New York Not-for-profit corporation,

                              Plaintiff,                    08 Civ. 2755 (PKC)

               -against-                                    MEMORANDUM
                                                            AND
LIGAND PHARMACEUTICALS INCORPORATED,                        ORDER
a Delaware corporation,

                              Defendant.
-------------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

               Defendant Ligand Pharmaceuticals Incorporated ("Ligand") has moved to dismiss

this action for lack of personal jurisdiction and improper venue.  Alternatively, it seeks to

transfer the action to the Southern District of California, pursuant to 28 U.S.C. § 1404(a).  For

the reasons set forth below, this court concludes that there is general jurisdiction over Ligand,

venue is proper and the section 1404(a) factors do not favor transfer to another district.  The

motion is denied.

Background

               The action was commenced in Supreme Court New York County by The

Rockefeller University (the "University") and timely removed to this Court by Ligand invoking

diversity jurisdiction.  28 U.S.C. §§ 1332, 1441(b).[1]  The University alleges that in 1992 it

licensed to Ligand certain technology, know-how and inventions relating to the tools to screen

therapeutic drugs.  It further alleges that Ligand granted a sublicense to a predecessor-in-interest

to SmithKline Beecham ("SKB") and that Ligand has received milestone payments from SKB.

---

[1] Because the requirements for diversity jurisdiction are satisfied, it is not necessary to decide whether there is also federal question jurisdiction under the patent laws, as Ligand asserts.

The University alleges that Ligand breached the 1992 licensing agreement by failing to pay to the University its contractual share of the milestone payments.

The licensing agreement between the University and Ligand and made as of September 30, 1992 (the "Agreement"), recites that Ligand is a Delaware corporation with its principal place of business in San Diego, California, and that the University is a non-profit educational corporation organized under the laws of the state of New York with an office in Manhattan. The Agreement refers to the "valuable technology and know-how relating to peptidyl hormone mediated gene expression" developed by "Dr. James Darnell and his colleagues at Rockefeller and at NYU." The licensed territory is defined as the "entire world." The agreement contains a New York choice of law provision.

In June 1992, Ligand's representatives were invited to New York to meet with representatives of the University in connection with the negotiation of what eventually became the licensing agreement. (Letter of Giesar, June 17, 1992.) Following execution of the agreement, Dr. Darnell wrote to Ligand's Director of Research thanking him for his visit to the University. (Letter of Darnell, Dec. 22, 1992.) A January 25, 1993 meeting was scheduled between Dr. Darnell and Dr. John Rosen of Ligand and Darnell's administrative secretary arranged for housing accommodations for Rosen at a University facility. (Letter of Cousseau, Jan. 20, 1993.)

Ligand argues that there is no general or specific jurisdiction over it. It asserts that those Ligand employees who performed work pursuant to the agreement with SKB's predecessor did so in California and not in New York. (Decl. of Marschke, Mar. 20, 2008.) It states that, at the time of suit, it was not present in New York on a systematic or continuous basis. It neither owns nor leases real estate in New York; it maintains no telephone listing and

has no employees in New York. (Decl. of Warfield-Graham, Mar. 19, 2008.)  It concedes that it

is authorized to do business in this state, but disputes whether such authorization is, alone, a

sufficient basis for jurisdiction.  Ligand sold the product AVINZA in New York from about 1998

to about 2007, but asserts that it no longer sells the product and that the product has nothing to do

with the subject matter of this lawsuit. (Id.)

Discussion

    A.  Personal Jurisdiction

        On a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff

bears the burden of demonstrating that the court has jurisdiction.  See In re Magnetic Audiotape

Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003) (per curiam).  "[T]he nature of the plaintiff's

obligation varies depending on the procedural posture of the litigation." Ball v. Metallurgie

Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).  Prior to discovery, a plaintiff may

defeat a Rule 12(b)(2) motion by "pleading in good faith legally sufficient allegations of

jurisdiction."  Id. (citation omitted).  Plaintiff must make a "prima facie showing" of personal

jurisdiction.  Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir. 1998) (quotation

omitted).

        Personal jurisdiction may be exercised over any defendant "who could be

subjected to the jurisdiction of a court of general jurisdiction in the state where the district court

is located."  Rule 4(k)(1)(A), Fed. R. Civ. P.  If plaintiff is able to establish a factual predicate

for jurisdiction under the laws of the forum state—here, New York—then the court must

consider whether the exercise of jurisdiction violates due process.  Wiwa v. Royal Dutch

Petroleum Co., 226 F.3d 88, 94 (2d Cir. 2000).

Under New York's general jurisdiction statute, N.Y. CPLR § 301, "a foreign corporation is subject to general personal jurisdiction in New York if it is 'doing business' in the state." Wiwa, 226 F.3d at 95.  "'[A] corporation is "doing business" and is therefore "present" in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York, "not occasionally or casually, but with a fair measure of permanence and continuity."'" Id. (quoting Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 267 (1917)) (alteration in Wiwa).  The corporation must be engaged in "a continuous and systematic course of 'doing business' here . . . ." Frummer v. Hilton Hotels Int'l, Inc., 19 N.Y.2d 533, 536 (1967).  There is no precise test for "doing business" in the state, and courts must look to "the aggregate of the corporation's activities in the State . . . ." Laufer v. Ostrow, 55 N.Y.2d 305, 310 (1982).  There are, however, several traditional factors that courts consider when undertaking this analysis, and they are "whether the company has an office in the state, whether it has any bank accounts or other property in the state, whether it has a phone listing in the state, whether it does public relations work there, and whether it has individuals permanently located in the state to promote its interests." Wiwa, 226 F.3d at 98.

Here, plaintiff's claim of general personal jurisdiction over defendant rests on a theory of consent.  Ligand has had on file with the Secretary of State of New York, from 1998 up to and including the date the summons was served, a proper authorization to do business.  Under N.Y. Business Corporation Law § 1301(a), a foreign corporation may not "do business" in the state until it has been authorized to do so in accordance with the statute.  Certain activities may be conducted in New York, e.g., shareholder meetings or maintenance of bank accounts, without such authority. Id. § 1301(b).  An application for authority to do business is filed with the

Department of State.  Id. § 1304.  The filing must state "[t]he county within the state in which its office is to be located."  Id. § 1304(5).  In this case, Ligand's current filing with the New York Department of State states: "County: New York."  The application for authorization requires the designation of the Secretary of State as its agent upon whom service may be served and also designation of an address "within or without this state" to which process received by the Secretary of State is to be mailed.  Id. § 1304(6).  Ligand has supplied the address of CT Corporation System at 111 Eighth Avenue, New York, New York as the address where process ought to be mailed.  In addition, the application permits, but does not require, the designation of a "registered agent . . . upon whom process against [the corporation] may be served."  Id. § 1304(7).  Ligand has elected to avail itself of this provision and has listed CT Corporation System at its New York County address as its "Registered Agent."

Upon the filing by the Department of State of the application, the foreign corporation becomes authorized to do business and "[s]uch authority shall continue so long as it retains its authority to do such business in the jurisdiction of its incorporation and its authority to do business in this state has not been surrendered, suspended or annulled in accordance with law."  Id. § 1305.  Ligand has the power to "revoke or change the designation of a registered agent."  Id. § 1309-A(3).  It also may surrender its authority to do business.  Id. § 1310.  There is no claim that Ligand has done either.

As support for the proposition that authorization to do business is not the equivalent of consent to personal jurisdiction, Ligand relies upon dictum in Beja v. Jahangiri, 453 F.2d 959, 962 (2d Cir. 1972), and a district court decision following Beja and concluding that there was no personal jurisdiction over a defendant authorized to do business in New York, Bellepointe v. Kohl's Dep't Stores, Inc., 975 F. Supp. 562 (S.D.N.Y. 1997).  Beja observed that

"[a]lthough the mere authorization to do business, even though granted at a corporation's request, may not be conclusive on the issue of jurisdiction under NYCPLR § 301, . . . it is certainly very strong evidence that the corporation is subject to *in personam* jurisdiction, . . ." 453 F.2d at 962 (citations omitted). [2]

With the exception of Bellepointe and one other district court case, Wright v. Maersk Line, Ltd., No. 99 Civ. 11282 (LMM), 2000 WL 744370, at *1 (S.D.N.Y. Jun. 9, 2000), cases since Beja have found personal jurisdiction where a defendant has maintained an active authorization to do business on file with the Department of State. See Chong v. Healthtronics, Inc., No. CV-06-1287 (SJF) (MLO), 2007 WL 1836831, at *6 (E.D.N.Y. June 20, 2007) (criticizing Bellepointe and Wright for relying on dictum in Beja, and noting that they are "not persuasive in light of the majority of federal district courts and New York courts which hold that a filing for authorization to do business in New York is sufficient to subject a foreign corporation to general personal jurisdiction in New York" (citing Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GmbH & Co. KG, 409 F. Supp. 2d 427, 436 (S.D.N.Y. 2006), rejected on other grounds by Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2d Cir. 2006))); see also, Cicalo v. Harrah's Operating Co., Inc., No. 06 Civ. 221 (PKL), 2008 WL 1847665, at *4 (S.D.N.Y. April 24, 2008) (Leisure, J.); Obabueki v. Int'l Bus. Mach., No. 99 Civ. 11262 (AGS), 99 Civ. 12486 (AGS), 2001 WL 921172, at *5 (S.D.N.Y. Aug. 14, 2001); Amalgamet, Inc. v. Ledoux & Co., 645 F. Supp. 248, 249 (S.D.N.Y. 1986).

In maintaining an active authorization to do business and not taking steps to surrender it as it has a right to do, defendant was on constructive notice that New York deems an authorization to do business as consent to jurisdiction. See Augsbury Corp. v. Petrokey Corp.,

---

[2] Beja relied upon Saggese v. Peare, 33 A.D.2d 900 (1st Dept. 1970), which was decided in the context of an assertion of quasi in rem jurisdiction over an out-of-state insurer, a theory which, for other unrelated reasons, is no longer good law. See Shaffer v. Heitner, 433 U.S. 186, 207-12 (1977).

97 A.D.2d 173, 175 (3d Dep't 1983) Augsbury, 97 A.D.2d at 175 ("A voluntary use of certain

state procedures . . . is in fact a form of constructive consent to personal jurisdiction which has

been found to satisfy due process . . . ."); Le Vine v. Isoserve, Inc., 70 Misc.2d 747, 749 (N.Y.

Sup. Ct., Albany Co. 1972) ("When a foreign corporation is licensed to do business in New

York, it consents to be sued on causes of action arising within and without the State.").

       Judge Cardozo, speaking for a unanimous New York Court of Appeals, had

occasion to address whether the designation by a foreign corporation of an agent in New York

upon whom service of process may be made amounted to consent to jurisdiction solely for

claims arising out of the transaction of business in New York or to all claims, regardless of

where they arose.  The Court concluded that it was a general consent to jurisdiction:

> The state of New York has said that a foreign stock corporation, other than a
> moneyed corporation, shall not do business here until it has obtained a certificate from
> the secretary of state. . . .
>
> To obtain such a certificate, however, there are conditions that must be fulfilled.
> One of them is a stipulation, to be filed in the office of the secretary of state, "designating
> a person upon whom process may be served within this state." . . .  The person designated
> is a true agent.  The consent that he shall represent the corporation is a real consent.  He
> is made the person "upon whom process against the corporation may be served."  The
> actions in which he is to represent the corporation are not limited.  The meaning must,
> therefore, be that the appointment is for any action which under the laws of this state may
> be brought against a foreign corporation. Code Civ. Proc. §§ 1780, 432.  The contract
> deals with jurisdiction of the person.  It does not enlarge or diminish jurisdiction of the
> subject-matter.  It means that whenever jurisdiction of the subject-matter is present,
> service on the agent shall give jurisdiction of the person.

Bagdon v. Philadelphia & Reading Coal & Iron Co., 217 N.Y. 432, 436-37 (1916).

       There are differences between the statutory regime at issue in Bagdon and that in

existence today and the case is not controlling.  But it is illustrative of New York's long-held

view that the designation of an agent for service of process is not merely a mechanism for

transmitting process but a "real consent" to jurisdiction.

A respected commentator has observed that foreign corporations "have no one to blame but themselves if they do not actually do business in New York or fail to surrender their license when they stop doing business here. The continuing existence of the privilege to do business in New York, regardless of whether it is exercised, rightfully yields jurisdictional consequences if the consent to service on the Secretary of State goes unrevoked." V. Alexander, Practice Commentaries, McKinney's CPLR § 301at C301:6 (West 2001).

This Court concludes that Ligand's unrevoked authorization to do business and its designation of a registered agent for service of process amount to consent to personal jurisdiction in New York.

Because jurisdiction is premised upon consent, it is doubtful that the minimum contacts test under the due process clause presents an impediment to the exercise of jurisdiction. See Burnham v. Sup. Ct., 495 U.S. 604, 616-22 (1990) (jurisdiction based upon transient presence in the jurisdiction is not subject to a due process minimum contacts analysis). Even if due process considerations come into play, they are satisfied here. The burden that the exercise of jurisdiction will impose on Ligand is slight given its voluntary decision to enter into the Agreement with a New York-based entity; also, the interests in adjudicating the case in this District is substantial given that the technology subject to Agreement was developed by a research institution headquartered in the District. See Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996).

B. Venue

Defendants also move to dismiss for improper venue. Rule 12(b)(3), Fed. R. Civ. P. "A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides,

if all defendants reside in the same State, . . ." 28 U.S.C. § 1391(a). Section 1391(c) provides

that, "[f]or purposes of venue under this chapter, a defendant that is a corporation shall be

deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time

the action is commenced." 28 U.S.C. § 1391(c). Personal jurisdiction over the sole corporate

defendant provides a proper basis for venue. Cicalo, 2008 WL 1847665, at *6 (citing PDK Labs,

Inc. v. Proactive Labs, Inc., 325 F. Supp. 2d 176, 182 (E.D.N.Y. 2004) and Laumann Mfg. Corp.

v. Castings USA, 913 F. Supp. 712, 719 (E.D.N.Y. 1996)).

       Defendant, citing 28 U.S.C. § 1404(a), alternatively argues that, if there is

jurisdiction and venue is found to be proper then the Court ought to transfer the case to the

Southern District of California for the convenience of the parties and witnesses and in the

interests of justice. Among the factors to be considered in deciding whether to transfer under

section 1404(a) are the following: "(1) the plaintiff's choice of forum, (2) the convenience of

witnesses, (3) the location of relevant documents and relative ease of access to sources of proof,

(4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to

compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." D.H.

Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106-07 (2d Cir. 2006) (quoting Albert Fadem Trust

v. Duke Energy Corp., 214 F. Supp. 2d 341, 343 (S.D.N.Y.2002)) (alteration in D.H. Blair).

       In this case, plaintiff, who is headquartered in New York, commenced the first

filed action in New York County, the day after a tolling arrangement between the parties expired.

Defendant commenced an action in the United States District Court, Southern District of

California later the same day. Ligand Pharm. Inc. v. Rockefeller Univ., 08 CV 401 (BEN)

(WMc) (S.D. Cal. Mar. 4, 2008). The first-filed New York action principally seeks damages

against Ligand for breach of contract. The second-filed California action seeks declaratory

judgment that Ligand is not liable to the University.  No special circumstances exist that would take this case out of the general rule that the first-filed action should be given priority; nor are there balancing convenience factors tipping in Ligand's favor.  <u>Employers Ins. of Wausau v. Fox Ent'mt Group, Inc.</u>, 522 F.3d 271, 274-76 (2d Cir. 2008).

    Ligand points out that the research work that gives rise to the University's claim took place in California by California residents, many of whom are no longer employed by Ligand.  But the lawsuit arises out of the rights conveyed in the 1992 licensing agreement to which the know-how, technology and inventions of the University's New York-based researchers are central.  Dr. Darnell is of advanced years, and is New York-based.  SMK is located in nearby Philadelphia.  Subpoenas for depositions of Ligand's former employees at their home locations should minimize any inconvenience to them.  The claims in this action are for breach of contract, specific performance, quantum meruit and declaratory relief.  Some slight weight should also be given to the choice-of-law provision in the 1992 Agreement, although no difficult or novel issue of New York law has been identified.  Although an assessment of the credibility of the witnesses is important in every case, this is not one with scienter-based claims.  Because the stakes appear to be sufficiently high and neither side may credibly claim financial hardship, this Court anticipates that, for the purpose of trial, the parties will elect to transport and lodge distant witnesses within their control.  On balance the convenience factors do not require a disturbance of the plaintiff's selection of forum.

Conclusion

       Defendant's motion to dismiss for lack of personal jurisdiction and improper venue and, alternatively, for a transfer of venue under section 1404(a) is denied.

       SO ORDERED.

                                     P. Kevin Castel
                          United States District Judge

Dated: New York, New York
       May 19, 2008