UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE ROCKEFELLER UNIVERSITY, a New York not-for-profit corporation, <br><br> Plaintiff, <br><br> v. <br><br> LIGAND PHARMACEUTICALS INCORPORATED, a Delaware corporation, <br><br> Defendant. | CASE NO. 08-CV-2755 (PKC) (HP) <br><br> **ANSWER AND COUNTERCLAIMS** |

Defendant, Ligand Pharmaceuticals Inc. ("Ligand"), by their attorneys Greenberg Traurig, LLP, for their answer to the Original Complaint (the "Complaint"), state as follows:

## NATURE OF THE ACTION

The "Nature of the Action" section of the Complaint is not part of the Complaint and is not in conformance with the Federal Rules of Civil Procedure rules of pleading. Accordingly, Ligand denies all of the allegations in the "Nature of the Action" section of the Complaint.

## PARTIES

1.     Ligand admits the allegations of Paragraph 1.

2.     Ligand admits the allegations of Paragraph 2.

## JURISDICTION AND VENUE

3.     Ligand admits the allegations of Paragraph 3.

4.     Ligand admits the allegations of Paragraph 4.

## BACKGROUND OF THE UNIVERSITY-LIGAND COLLABORATION

5.     Ligand admits that The Rockefeller University ("Rockefeller") was founded in 1901. With respect to the remaining allegations and assertions of Paragraph 5, Ligand either denies the allegations or lacks sufficient information to admit or deny and therefore denies the

remaining allegations.

6.    Ligand denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6 and, on that basis, denies them.

7.    Ligand denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7 and, on that basis, denies them.

8.    Ligand denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 8 and, on that basis, denies them.

9.    Ligand denies each and every allegation contained in Paragraph 9 of the Complaint.

## 1992 LICENSE AGREEMENT BETWEEN THE UNIVERSITY AND LIGAND

10.    Ligand admits that the University entered into negotiations with Ligand.  With respect to the remaining allegations and assertions of Paragraph 10, Ligand either denies the allegations or lacks sufficient information to admit or deny and therefore denies the remaining allegations.

11.    Ligand admits the allegations of Paragraph 11.

12.    Ligand admits that in the 1992 Agreement, the University granted Ligand a sole exclusive world-wide license under Licensed Patent Rights and Technical Information, to make, have made, use and sell Products or practice Processes.  Ligand admits that the 1992 Agreement contains Section 1.4.  With respect to the remaining allegations and assertions of Paragraph 12, Ligand either denies the allegations or lacks sufficient information to admit or deny and therefore denies the remaining allegations.

13.    Ligand denies each and every allegation of Paragraph 13.

14.    Ligand admits that the 1992 Agreement contains Sections 2.7.  Ligand admits that the 1992 Agreement contains Sections 2.2 and 2.3.  Ligand admits that the 1992 Agreement contains Section 2.5.  Ligand admits that the 1992 Agreement contains Section 2.4.  With respect to the remaining allegations and assertions of Paragraph 14, Ligand either denies the allegations or lacks sufficient information to admit or deny and therefore denies the remaining allegations.

15.    Ligand admits that Section 2.5, as quoted in Paragraph 15, is an accurate recitation of Section 2.5 of the 1992 Agreement.  With respect to the remaining allegations and assertions of Paragraph 15, Ligand either denies the allegations or lacks sufficient information to admit or deny and therefore denies the remaining allegations.

16.    Ligand admits the allegations of Paragraph 16.

17.    Ligand admits the allegations of Paragraph 17.

## 1994 RESEARCH, DEVELOPMENT, AND LICENSE AGREEMENT BETWEEN LIGAND AND SMITHKLINE BEECHAM

18.    Ligand admits that on December 29, 1994, Ligand entered into an exclusive research and development collaboration and license with SmithKlineBeecham.  With respect to the remaining allegations and assertions of Paragraph 18, Ligand either denies the allegations or lacks sufficient information to admit or deny and therefore denies the remaining allegations.

19.    Ligand admits the allegations of Paragraph 19.

## DISPUTE BETWEEN THE UNIVERSITY AND LIGAND CONCERNING THE DEVELOPMENT OF PHARMACEUTICAL CANDIDATES

20.    Ligand admits the allegations made in Paragraph 20 except that Ligand denies any implication that the identification and development of the pharmaceutical compounds used or relied on any rights under the 1992 Agreement.

21.    Ligand admits the allegations made in the first two sentences of Paragraph 21. With respect to the remaining allegations and assertions of Paragraph 21, Ligand either denies the allegations or lacks sufficient information to admit or deny and therefore denies the remaining allegations.

22.    Ligand admits that independent of SKB and after the end of the referenced SKB/Ligand collaboration, Ligand has identified and developed LGD-4665.  Ligand admits that as of December 2007, it generated positive Phase I results.  Ligand admits that LGD-4665 will be developed for multiple indications.  Ligand also admits it has next generation molecules in the research phase with promising TPO mimetic activities.  Ligand denies the remaining allegations

and assertions of Paragraph 22.

23.    Ligand admits that the Section 1.5, as quoted in Paragraph 23, is an accurate recitation of Section 1.5 of the 1992 Agreement. Ligand denies the remaining allegations and assertions of Paragraph 23.

24.    Ligand admits the allegations of Paragraph 24.

25.    Ligand admits the allegations of Paragraph 25.

26.    Ligand denies each and every allegation contained in Paragraph 26 of the Complaint.

27.    Ligand denies each and every allegation contained in Paragraph 27 of the Complaint.

28.    Ligand admits that it takes the position that no milestone payments are or will be owing to Rockefeller under the 1992 Agreement.  With respect to the remaining allegations and assertions of Paragraph 28, Ligand either denies the allegations or lacks sufficient information to admit or deny and therefore denies the remaining allegations.

29.    Ligand admits that it has taken the position that Rockefeller is not entitled to any royalties under the 1992 Agreement.  With respect to the remaining allegations and assertions of Paragraph 29, Ligand either denies the allegations or lacks sufficient information to admit or deny and therefore denies the remaining allegations.

30.    Ligand admits that by letter dated August 9, 2007, Ligand informed Rockefeller that Ligand was providing written notice that "Ligand is exercising its right to terminate the above-referenced Agreement.  Pursuant to Section 11.2, this termination will be effective on November 7, 2007."  With respect to the remaining allegations and assertions of Paragraph 30, Ligand either denies the allegations or lacks sufficient information to admit or deny and therefore denies the remaining allegations.

31.    Ligand admits that on September 25, 2007, there was a meeting between representatives of Ligand and Rockefeller.  Ligand admits that at the meeting, Rockefeller notified Ligand that it wished to exercise its audit rights under Section 4.2 of the 1992

Agreement. With respect to the remaining allegations and assertions of Paragraph 31, Ligand either denies the allegations or lacks sufficient information to admit or deny and therefore denies the remaining allegations.

32.    Ligand admits the allegations of Paragraph 32.

33.    Ligand admits Rockefeller purported to initiate an audit on or about November 13 or 14, 2007. Ligand denies the remaining allegations and assertions of Paragraph 33.

34.    Ligand admits the allegations of Paragraph 34.

## FIRST CAUSE OF ACTION

### (Breach of Contract Against Ligand)

35.    Ligand incorporates by reference each and every response contained in Paragraphs 1 through 34 of this Answer and Counterclaims as though fully set forth herein in response to the allegations of Paragraph 35.

36.    Ligand denies each and every allegation contained in Paragraph 36 of the Complaint.

37.    Ligand denies each and every allegation contained in Paragraph 37 of the Complaint.

38.    Ligand denies each and every allegation contained in Paragraph 38 of the Complaint.

39.    Ligand denies each and every allegation contained in Paragraph 39 of the Complaint.

## SECOND CAUSE OF ACTION

### (Unjust Enrichment/Constructive Trust)

40.    Ligand incorporates by reference each and every response contained in Paragraphs 1 through 39 of this Answer and Counterclaims as though fully set forth herein in response to the allegations of Paragraph 40.

41.    Ligand denies each and every allegation contained in Paragraph 41 of the Complaint.

42.    Ligand denies each and every allegation contained in Paragraph 42 of the Complaint.

43.    Ligand denies each and every allegation contained in Paragraph 43 of the Complaint.

44.    Ligand denies each and every allegation contained in Paragraph 44 of the Complaint.

45.    Ligand denies each and every allegation contained in Paragraph 45 of the Complaint.

46.    Ligand denies each and every allegation contained in Paragraph 46 of the Complaint.

47.    Ligand denies each and every allegation contained in Paragraph 47 of the Complaint.

48.    Ligand denies each and every allegation contained in Paragraph 48 of the Complaint.

49.    Ligand denies each and every allegation contained in Paragraph 49 of the Complaint.

50.    Ligand denies each and every allegation contained in Paragraph 50 of the Complaint.

## THIRD CAUSE OF ACTION

### (Quantum Meruit)

51.    Ligand incorporates by reference each and every response contained in Paragraphs 1 through 50 of this Answer and Counterclaims as though fully set forth herein in response to the allegations of Paragraph 51.

52.    Ligand denies each and every allegation of Paragraph 52.

53.    Ligand denies each and every allegation of Paragraph 53.

54.    Ligand denies each and every allegation contained in Paragraph 54 of the Complaint.

## FOURTH CAUSE OF ACTION

### (Specific Performance of Contractual Right to Perform Audit)

55.    Ligand incorporates by reference each and every response contained in Paragraphs 1 through 54 of this Answer and Counterclaims as though fully set forth herein in response to the allegations of Paragraph 55.

56.    Ligand denies each and every allegation contained in Paragraph 56 of the Complaint.

57.    Ligand denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 57 and, on that basis, denies them.

58.    Ligand denies each and every allegation of Paragraph 58.

59.    Ligand denies each and every allegation contained in Paragraph 59 of the Complaint.

60.    Ligand denies each and every allegation contained in Paragraph 60 of the Complaint.

## FIFTH CAUSE OF ACTION

### (Declaratory Relief Against Ligand)

61.    Ligand incorporates by reference each and every response contained in Paragraphs 1 through 60 of this Answer and Counterclaims as though fully set forth herein in response to the allegations of Paragraph 61.

62.    Ligand admits the allegations of Paragraph 62.

63.    Ligand admits Rockefeller seeks declaratory relief in Paragraph 63. Ligand denies the remaining allegations.

64.    As alleged in Paragraph 64, Ligand admits declaratory relief is requested by both parties. With respect to the remaining allegations and assertions of Paragraph 64, Ligand denies the remaining allegations.

## PRAYER FOR RELIEF

Rockefeller's prayer for relief contains no factual assertions to which a response is required. To the extent that the prayer for relief may be deemed to require a response, it is denied and Ligand specifically denies Rockefeller is entitled to the relief requested.

## AFFIRMATIVE DEFENSES

Ligand asserts the following affirmative defenses to each of Rockefeller's causes of action.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

65.    The Complaint fails to state facts sufficient to constitute a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Material Breach)

66.    Rockefeller materially breached the warranty of §8.1 of the 1992 Agreement.

67.    Section 8.1 of the 1992 Agreement is a warranty by Rockefeller that it will discharge its duty of disclosure to the United States Patent and Trademark Office ("PTO") regarding the Rockefeller Patents.

68.    The duty of disclosure as set forth in 37 CFR §1.56(a) requires Rockefeller to disclose to the PTO all information known to that individual to be material to patentability as defined in this section.

69.    Pursuant 37 CFR §1.56(b)(1) a reference is material if it establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim.

70.    Rockefeller did not discharge the duty of disclosure in that Rockefeller was aware of certain prior art and references that were material to the examination of certain patents known to Rockefeller but not cited to the PTO.

71.    At least US Patent Nos. 6,030,780; 6,605,442; 6,030,780; 6,720,154; 7,115,567; and 5,883,228 of the Rockefeller Patents were prosecuted by Rockefeller without citing prior art known to Rockefeller as a result of prosecution of other of the Rockefeller Patents.

72.     Of the Rockefeller Patents specifically identified in Paragraph 71 above, one or more of the patents would not have been allowed had the PTO been aware of the prior art references withheld by Rockefeller.

73.     On March 13, 2008, Ligand notified Rockefeller of the material breach under the 1992 Agreement and that the material breach is incurable because, among other reasons, inequitable conduct cannot be cured and, to the extent the License Agreement provides for a cure, such would be a futile act.

74.     The foregoing conduct constitutes a material breach of the warranty of §8.1 of the License Agreement.

75.     On March 13, 2008, Ligand notified Rockefeller of the material breach under the 1992 Agreement and that the material breach is incurable because, among other reasons, inequitable conduct cannot be cured and, to the extent the License Agreement provides for a cure, such would be a futile act.

### THIRD AFFIRMATIVE DEFENSE

#### (Waiver, Estoppel, Laches)

76.     Rockefeller's claims for relief are barred in whole or in part by the doctrines of waiver, estoppel, and/or laches.

### FOURTH AFFIRMATIVE DEFENSE

#### (Unclean Hands)

77.     Rockefeller's claims for relief are barred in whole or in part by the doctrine of unclean hands.

### FIFTH AFFIRMATIVE DEFENSE

#### (Breach of Covenant of Good Faith and Fair Dealing)

78.     On information and belief, Rockefeller has filed one or more patent applications for the purpose of claiming inventions covering methods relating to use or treatment of patients using the GSK Products and LGD-4665, as defined hereafter.  Rockefeller has done so with the intent to make the GSK Products and LGD-4665 subject to payments under the 1992 Agreement

when such would not otherwise be the case. Rockefeller filed the patent applications with knowledge that no valid patent would issue and in doing so breached its implied covenant of good faith and fair dealing.

## SIXTH AFFIRMATIVE DEFENSE

### (Reservation of Rights)

79.     Ligand reserves the right to assert other defenses and affirmative defenses as this action proceeds and which are not apparent from the face of the Complaint.

## COUNTERCLAIMS

Ligand for its counterclaims against Rockefeller alleges as follows:

## PARTIES

80.     Counterclaim Plaintiff Ligand is a Delaware corporation with its principal place of business at 10275 Science Center Drive San Diego, California 92121.

81.     Ligand was incorporated in 1987 and since then has been engaged in, *inter alia*, the research and development of drugs for various diseases and disorders. Ligand currently has less than sixty (60) employees.

82.     Counter-claim Defendant Rockefeller is a New York not-for-profit corporation with its principal place of business at 1230 York Avenue, New York, New York 10021.

83.     New York University ("NYU") is a New York not-for-profit corporation with its principal place of business at 70 Washington Square S, New York, New York 10012.

84.     NYU is a university periodically engaged in research and development. NYU is not a party to the License Agreement between Ligand and Rockefeller dated September 30, 1992, (Exhibit A attached to the Complaint, the "1992 Agreement" or "License Agreement") or this lawsuit, but in the past it has received payments due to it under the License Agreement.

## JURISDICTION AND VENUE

85.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332, 1338 and 2201.

86.     Rockefeller is subject to personal jurisdiction in this District.

87.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) and (c).

## FACTUAL BACKGROUND

88.     The Licensed Patent Rights are defined in Section 1.3 of the License Agreement to be patent applications identified in Exhibit A to the License Agreement, related "divisionals, continuations, continuations-in-part, reissues, renewals, foreign counterparts, extension or additions," and any patents which may issue thereon. (Section 1.3, License Agreement).

89.     Rockefeller is the identified assignee of United States patents, including: U.S. Pat. No. 6,605,442; U.S. Pat. No. 5,976,835; U.S. Pat. No. 6,013,475; U.S. Pat. No. 6,030,808; U.S. Pat. No. 6,338,949; U.S. Pat. No. 6,124,118; U.S. Pat. No. 7,060,682; U.S. Pat. No. 5,716,622; U.S. Pat. No. 5,883,228; U.S. Pat. No. 6,030,780; U.S. Pat. No. 6,720,154; U.S. Pat. No. 7,115,567; U.S. Pat. No. 6,960,647; and U.S. Pat. No. 7,211,655 ("Rockefeller Patents") which all either claim priority back to the patent applications listed in Exhibit A to the 1992 Agreement or relate to what Rockefeller argues is Technical Information under the 1992 Agreement.

90.     Technical Information is defined in Section 1.4 of the License Agreement to include "technical data, information processes, materials and know-how, whether or not patentable" relating to peptidyl mediated gene expression that is owned by Rockefeller and was developed as of the effective date of the License Agreement or during the next five (5) years. (Section 1.4, 1992 Agreement).

91.     The License Agreement contemplated that certain of the intellectual property of Rockefeller might be used by Ligand in development of new pharmaceutical agents. (Sections 2.4 and 2.5, License Agreement).  Nothing in the License Agreement prohibited Ligand from developing processes and products relating to cell-based assays to screen candidate drugs independent of Rockefeller's intellectual property, as Ligand had done previously with its IR technology.

92.    Independent of the rights acquired under the License Agreement, on December 29, 1994, Ligand entered into a Research Development and License Agreement (the "1994 SKB/Ligand Agreement" or "GSK License") with SmithKline Beecham Corporation, now GlaxoSmithKline ("SKB" or "GSK").    The GSK License relates to a joint research and development effort by Ligand and GSK directed to discovery of small molecule compounds which act as modulators of certain HEMATOPOIETIC GROWTH FACTORS (including TPO, as defined in Section 1.17 of the GSK License) and to develop pharmaceutical products from such compounds.

93.    On information and belief, Rockefeller has been aware of the GSK License since it was signed by Ligand and GSK in 1994.

94.    Under the RESEARCH PROGRAM as defined in the GSK License, a cell-based high throughput screen was developed by Ligand to help identify at least one potentially useful drug known as eltrombopag or PROMACTA® and a back-up thereto known as SB-559448 ("GSK Products").    Under the GSK License, GSK has paid Ligand milestone payments amounting to $8 million for achieving certain milestones under the GSK License.

95.    GSK has made significant progress toward gaining approval for at least one of the GSK Products through the regulatory process before the Food and Drug Administration.

96.    As early as October 2003, Rockefeller became specifically aware of the GSK Products and inquired about and demanded payment from Ligand under the License Agreement for what Rockefeller alleged were uses of its Licensed Patent Rights or Technical Information covered by the License Agreement.

97.    Ligand disputes that the GSK Products are subject to payments under the License Agreement.

98.    Independent of GSK and the GSK License, Ligand developed a TPO mimic drug identified for research and development purposes as LGD-4665, which Rockefeller claims is subject to payment under the License Agreement. (Complaint, ¶22).

99.    Section 2.5 of the License Agreement obligates Ligand to pay Rockefeller only

under certain circumstances. The payments described in Section 2.5 generally are twenty five per cent (25%) of payments received from third parties by Ligand if those payments were to secure the right to use Technical Information or the right to sell Products or Processes.

100.    The GSK Products and LGD 4665 are not Products as the term "Product" is defined under Section 1.5 of the License Agreement. They do not embody or use any invention described or claimed in the Licensed Patent Rights. Furthermore, Technical Information was not essential to their discovery or development. GSK's payments to Ligand are not and will not be to secure any Rockefeller rights that would otherwise prevent GSK from selling the GSK Products. Rockefeller does not own any Licensed Patent Rights or Technical Information that GSK would need to sell the GSK Products. Thus, no payments are due to Rockefeller under the License Agreement.

101.    Rockefeller has alleged the GSK Products and LGD-4665 embody or use one or more invention(s) described or claimed in the Licensed Patent Rights. In order to qualify as an invention in a claim of an issued patent, however, the alleged invention must be defined by a claim that is valid and enforceable.

102.    Section 11.2 of the License Agreement provides that Ligand shall have the right to terminate any license grant at any time upon ninety days written notice.

103.    On August 9, 2007, pursuant to Section 11.2, Ligand sent by facsimile and U.S. Mail a notice to Rockefeller of its intent to terminate the License Agreement. Pursuant to Section 11.2, the termination was effective under the License Agreement ninety days thereafter or on November 7, 2007.

104.    Since termination of the License Agreement under Section 11.2, Rockefeller has claimed that the License Agreement was not terminated. Rockefeller contends that 25% of past and future payments related to GSK Products and LGD-4665 received by Ligand must be shared with Rockefeller. Rockefeller contends that, depending on how LGD-4665 is sold, it is subject to payments of 5% or 25% to Rockefeller.

## FIRST CLAIM FOR RELIEF

**(Declaratory Judgment Scope of Licensed Patent Rights)**

105.    Ligand incorporates by reference Paragraphs 1 through 104 of its Answer and Counterclaims as though fully set forth herein.

106.    The License Agreement between Ligand and Rockefeller provides for, among other things, a license of Licensed Patent Rights. (Section 2.1, License Agreement).

107.    Rockefeller has alleged that the Rockefeller Patents are included within the Licensed Patent Rights and also that the GSK Products and LGD-4665, or their use, embody or employ the Licensed Patent Rights.

108.    Applying the plain meaning of the words of the License Agreement, the GSK Products and LGD-4665 and their use do not embody or employ any invention described or claimed in the Licensed Patent Rights.

109.    An actual controversy exists between Rockefeller and Ligand as to whether or not the GSK Products and LGD-4665, or their use, embody or employ Licensed Patent Rights, whether or not the GSK Products and LGD-4665, or their use, embody or employ any invention described or claimed in the Rockefeller Patents and whether or not the payments Rockefeller is demanding under the License Agreement are in fact due.

110.    Even if the GSK Products and LGD-4665 embody or use an invention merely described in the Rockefeller Patents, the patent laws of the United States protect only inventions defined by valid and enforceable claims and there is an actual controversy as to whether or not any claim of the Rockefeller Patents is valid for failure to comply with any one of 35 USC §§ 101 et seq.

111.    On information and belief, Rockefeller has filed one or more patent applications for the purpose of claiming the GSK Products and LGD-4665 are subject to payments under the License Agreement, and Rockefeller did so with knowledge that no valid patent should issue. There is an actual controversy as to whether the GSK Products and LGD-4665, or their use, embody or employ any invention described or claimed in any pending patent application and whether any such patent application filed after learning of the GSK Products and LGD-4665 was

filed in good faith under the License Agreement.

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment Scope of Technical Information)

112.    Ligand incorporates by reference Paragraphs 1 through 111 of its Answer and Counterclaims as though fully set forth herein.

113.    The License Agreement between Ligand and Rockefeller provides for, among other things, a license of Rockefeller Technical Information. (Section 2.1, License Agreement).

114.    Rockefeller alleges that Technical Information was essential to the discovery or development of the GSK Products and LGD-4665.

115.    Ligand, relying on the plain meaning of the License Agreement, alleges that Technical Information was not used in the discovery or development of the GSK Products and LGD-4665.  Ligand further alleges under Section 1.4 of the License Agreement Technical Information must be owned by Rockefeller and existing or capable of description in a tangible form and must have been developed in the laboratory of Darnell or of David Levy of NYU as of September 30, 1992 or by Darnell at his laboratory on or before five years from September 30, 1992 or by September 30, 1997.  The GSK Products and LGD-4665 were not developed using Technical Information but rather used either publicly known information, information known or discovered by Ligand and/or GSK, or information received from third parties.

116.    An actual controversy exists between Rockefeller and Ligand as to whether or not Technical Information was essential to the discovery or development of the GSK Products and LGD-4665.

## THIRD CLAIM FOR RELIEF

### (Declaratory Judgment Termination)

117.    Ligand incorporates by reference Paragraphs 1 through 116 of its Answer and Counterclaims as though fully set forth herein.

118.    Rockefeller relies on Section 11.3 of the License Agreement in asserting that, absent a material breach, the "Agreement" cannot be terminated.

119.    Ligand claims, in the alternative, that the notice dated August 9, 2007 either terminated the License Agreement under Section 11.2 in its entirety, subject only to certain specified rights which survived termination, or to the extent any different, terminated all then existing license rights, again subject only to any rights that might survive termination.

120.    An actual controversy exists between Rockefeller and Ligand as to whether or not the License Agreement has been terminated under Section 11.2 and as to the nature of the rights terminated.

### FOURTH CLAIM FOR RELIEF

### (Declaratory Judgment Breach of Duty of Disclosure)

121.    Ligand incorporates by reference Paragraphs 1 through 120 of its Answer and Counterclaims as though fully set forth herein.

122.    Section 8.1 of the 1992 Agreement is a warranty by Rockefeller that it will discharge its duty of disclosure to the United States Patent and Trademark Office ("PTO") regarding the Rockefeller Patents.

123.    The duty of disclosure as set forth in 37 CFR §1.56(a) requires Rockefeller to disclose to the PTO all information known to be material to patentability as defined in this section.

124.    Pursuant 37 CFR §1.56(b)(1) a reference is material if it establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim.

125.    Rockefeller did not discharge the duty of disclosure in that Rockefeller was aware of certain prior art and references that were material to the examination of certain patents known to Rockefeller but not cited to the PTO.

126.    At least U.S. Patent Nos. 6,030,780; 6,605,442; 6,030,780; 6,720,154; 7,115,567; and 5,883,228 of the Rockefeller Patents were prosecuted by Rockefeller without citing prior art known to Rockefeller as a result of prosecution of other of the Rockefeller Patents.

127.    Of the Rockefeller Patents specifically identified in Paragraph 126 above, one or more of the patents would not have been allowed had the PTO been aware of the prior art

references withheld by Rockefeller.

128.    On March 13, 2008, Ligand notified Rockefeller of the material breach under the 1992 Agreement and that the material breach is incurable because, among other reasons, inequitable conduct cannot be cured and, to the extent the License Agreement provides for a cure, such would be a futile act.

129.    The foregoing conduct constitutes a material breach of the warranty of §8.1 of the License Agreement.

130.    On March 13, 2008, Ligand notified Rockefeller of the material breach under the 1992 Agreement and that the material breach is incurable because, among other reasons, inequitable conduct cannot be cured and, to the extent the License Agreement provides for a cure, such would be a futile act and Rockefeller denies that it has breached the License Agreement duty of disclosure.

131.    An actual controversy exists between Rockefeller and Ligand as to whether or not Rockefeller breached Section 8.1 of the License Agreement.

## FIFTH CLAIM FOR RELIEF

### (Declaratory Judgment of Invalidity And

### Non-Infringement of U.S. Patent No. 6,030,780)

132.    Ligand incorporates by reference Paragraphs 1 through 131 of its Answer and Counterclaims as though fully set forth herein.

133.    The License Agreement between Ligand and Rockefeller provides for, among other things, a license of Licensed Patent Rights. (Section 2.1, License Agreement).

134.    Rockefeller has alleged that U.S. Patent No. 6,030,780 (hereinafter the "'780 patent") is included within the Licensed Patent Rights and also that the GSK Products and LGD-4665, or their use, embody or employ the Licensed Patent Rights.

135.    An actual controversy exists between Rockefeller and Ligand as to whether or not the GSK Products and LGD-4665, or their use, embody or employ Licensed Patent Rights, including the '780 patent.

136.    Even if the GSK Products and LGD-4665 embody or use an invention merely described in the '780 patent, the patent laws of the United States protect only inventions defined by valid and enforceable claims and there is an actual controversy as to whether or not any claim of the '780 patent is valid for failure to comply with any one of 35 USC §§ 101 et seq.

137.    The '780 patent is invalid at least because it is obvious under 35 U.S.C. §103 with respect to at least Schreiber *et al.* (U.S. Patent No. 5,463,023) and its corresponding publications.

138.    The '780 patent is invalid at least because it is obvious under 35 U.S.C. §103 with respect to at least Evans *et al.* (U.S. Patent No. 4,981,784) and its corresponding publications.

## SIXTH CLAIM FOR RELIEF

### (Declaratory Judgment of Invalidity And

### Non-Infringement of U.S. Patent No. 6,605,442)

139.    Ligand incorporates by reference Paragraphs 1 through 138 of its Answer and Counterclaims as though fully set forth herein.

140.    The License Agreement between Ligand and Rockefeller provides for, among other things, a license of Licensed Patent Rights. (Section 2.1, License Agreement).

141.    Rockefeller has alleged that U.S. Patent No. 6,605,442 (hereinafter the "'442 patent") is included within the Licensed Patent Rights and also that the GSK Products and LGD-4665, or their use, embody or employ the Licensed Patent Rights.

142.    An actual controversy exists between Rockefeller and Ligand as to whether or not the GSK Products and LGD-4665, or their use, embody or employ Licensed Patent Rights, including the '442 patent.

143.    Even if the GSK Products and LGD-4665 embody or use an invention merely described in the '442 patent, the patent laws of the United States protect only inventions defined by valid and enforceable claims and there is an actual controversy as to whether or not any claim of the '442 patent is valid for failure to comply with any one of 35 USC §§ 101 et seq.

144.    The '442 patent is invalid at least because it is obvious under 35 U.S.C. §103 with respect to at least Evans *et al.* (U.S. Patent No. 4,981,784) and its corresponding publications.

## SEVENTH CLAIM FOR RELIEF

### (Declaratory Judgment Of Invalidity And

### Non-Infringement of U.S. Patent No. 6,720,154)

145.    Ligand incorporates by reference Paragraphs 1 through 144 of its Answer and Counterclaims as though fully set forth herein.

146.    The License Agreement between Ligand and Rockefeller provides for, among other things, a license of Licensed Patent Rights. (Section 2.1, License Agreement).

147.    Rockefeller has alleged that U.S. Patent No. 6,720,154 (hereinafter the "'154 patent") is included within the Licensed Patent Rights and also that the GSK Products and LGD-4665, or their use, embody or employ the Licensed Patent Rights.

148.    An actual controversy exists between Rockefeller and Ligand as to whether or not the GSK Products and LGD-4665, or their use, embody or employ Licensed Patent Rights, including the '154 patent.

149.    Even if the GSK Products and LGD-4665 embody or use an invention merely described in the '154 patent, the patent laws of the United States protect only inventions defined by valid and enforceable claims and there is an actual controversy as to whether or not any claim of the '154 patent is valid for failure to comply with any one of 35 USC §§ 101 et seq.

150.    The '154 patent is invalid at least because it is obvious under 35 U.S.C. §103 with respect to at least Evans *et al.* (U.S. Patent No. 4,981,784) and its corresponding publications.

## EIGHTH CLAIM FOR RELIEF

### (Declaratory Judgment Of Invalidity And

### Non-Infringement of U.S. Patent No. 7,115,567)

151.    Ligand incorporates by reference Paragraphs 1 through 150 of its Answer and Counterclaims as though fully set forth herein.

152.    The License Agreement between Ligand and Rockefeller provides for, among other things, a license of Licensed Patent Rights. (Section 2.1, License Agreement).

153.    Rockefeller has alleged that U.S. Patent No. 7,115,567 (hereinafter the "'567

patent") is included within the Licensed Patent Rights and also that the GSK Products and LGD-4665, or their use, embody or employ the Licensed Patent Rights.

154.    An actual controversy exists between Rockefeller and Ligand as to whether or not the GSK Products and LGD-4665, or their use, embody or employ Licensed Patent Rights, including the '567 patent.

155.    Even if the GSK Products and LGD-4665 embody or use an invention merely described in the '567 patent, the patent laws of the United States protect only inventions defined by valid and enforceable claims and there is an actual controversy as to whether or not any claim of the '567 patent is valid for failure to comply with any one of 35 USC §§ 101 et seq.

156.    The '567 is invalid at least because it is obvious under 35 U.S.C. §103 with respect to at least Evans *et al.* (U.S. Patent No. 4,981,784) and its corresponding publications.

## NINTH CLAIM FOR RELIEF

### (Declaratory Judgment Of Invalidity And

### Non-Infringement of U.S. Patent No. 5,883,228)

157.    Ligand incorporates by reference Paragraphs 1 through 156 of its Answer and Counterclaims as though fully set forth herein.

158.    The License Agreement between Ligand and Rockefeller provides for, among other things, a license of Licensed Patent Rights. (Section 2.1, License Agreement).

159.    Rockefeller has alleged that U.S. Patent No. 5,883,228 (hereinafter the "'228 patent") is included within the Licensed Patent Rights and also that the GSK Products and LGD-4665, or their use, embody or employ the Licensed Patent Rights.

160.    An actual controversy exists between Rockefeller and Ligand as to whether or not the GSK Products and LGD-4665, or their use, embody or employ Licensed Patent Rights, including the '228 patent.

161.    Even if the GSK Products and LGD-4665 embody or use an invention merely described in the '228 patent, the patent laws of the United States protect only inventions defined by valid and enforceable claims and there is an actual controversy as to whether or not any claim

of the '228 patent is valid for failure to comply with any one of 35 USC §§ 101 et seq.

162.    The '228 is invalid at least because it is obvious under 35 U.S.C. §103 with respect to at least Groner *et al.* (U.S. Patent No. 5,534,409) and its corresponding publications.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that:

1.    Rockefeller's Complaint to be dismissed with prejudice and that it has no relief.

2.    This Court enter a judgment declaring the GSK Products and LGD-4665 do not embody any invention(s) described or claimed in the Licensed Patent Rights and that the use of the GSK Products and LGD-4665 do not employ any invention(s) described or claimed in the Licensed Patent Rights;

3.    This Court enter a judgment declaring that Technical Information was not essential to the discovery or development of the GSK Products and LGD-4665;

4.    This Court enter a judgment declaring that Ligand is not liable for any additional payments under the License Agreement beyond those that have already been made;

5.    This Court enter a judgment declaring that the License Agreement was terminated as of November 7, 2007, and that subsequent to termination of the License Agreement, Ligand is not liable for any future payments under the License Agreement; or, in the alternative, this Court enter a judgment declaring the License Agreement terminated as of March 13, 2008 as a result of Rockefeller's material breach of §8.1 of the License Agreement;

6.    This Court enter a judgment declaring U.S. Patent No. 6,030,780 invalid and not infringed by the GSK Products or LGD-4665;

7.    This Court enter a judgment declaring U.S. Patent No. 6,605,442 invalid and not infringed by the GSK Products or LGD-4665;

8.    This Court enter a judgment declaring U.S. Patent No. 6,720,154 invalid and not infringed by the GSK Products or LGD-4665;

9.    This Court enter a judgment declaring U.S. Patent No. 7,115,567 invalid and not infringed by the GSK Products or LGD-4665;

10.     This Court enter a judgment declaring U.S. Patent No. 5,883,228 invalid and not infringed by the GSK Products or LGD-4665;

11.     Plaintiff be awarded costs, attorneys' fees and other relief, both legal and equitable, to which it may be justly entitled;

12.     Plaintiff be awarded relief under 28 U.S.C. § 2202; and

13.     Plaintiff be awarded such other and further relief as this Court deems proper.

Dated: New York, New York
      May 22, 2008

                          **GREENBERG TRAURIG, LLP**

                          By: _____
                              Simon Miller (SM-6728)
                              200 Park Avenue
                              New York, New York 10166
                              (212) 801-9200
                              millers@gtlaw.com

                              -and-

                              KNOBBE MARTENS, OLSON & BEAR, LLP
                              Darrell Olson
                              2040 Main Street, 14th Floor
                              Irvine, CA 92614
                              (949) 760-0404
                              darrell.olson@kmob.com

                              -and-

                              KNOBBE MARTENS, OLSON & BEAR, LLP
                              Joseph M. Reisman
                              Gregg I. Anderson
                              550 West C Street
                              Suite 1200
                              San Diego, CA 92101
                              (619) 235-8550
                              joseph.reisman@kmob.com
                              gregg.anderson@kmob.com

                              *Attorneys for Defendants*